### FLENN STAPLETON v. THE STATE.

#### No. 4190.    Decided June 9, 1909.

**1.—Murder—Evidence—Manslaughter—Mitigating Circumstances.**

Upon trial for murder where the defendant was convicted for murder in the second degree, the court erred in excluding testimony to the effect that defendant's brother conveyed the information to the defendant that the deceased had struck his mother and had mistreated him. If defendant was informed and believed that the deceased had struck his mother it would be adequate cause requiring a charge upon manslaughter; besides, such testimony was of a mitigating character, and was not self-serving, and acccunted for defendant's presence at the scene of the difficulty.

**2.—Same—Arrest—Statement by Defendant.**

Upon trial for murder where the defendant made certain statements to the officer to the effect that he had killed deceased, etc., whereupon the officer arrested him, such statement was not made while defendant was under arrest and could not be excluded on this ground.

Appeal from the District Court of DeWitt. Tried below before the Hon James C. Wilson.

Appeal from a conviction of murder in the second degree; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at ninety-nine years confinement in the penitentiary.

The evidence shows that deceased, Will Bullard, was in the employ of the S. A. & A. P. Ry. Company, and his work was at the roundhouse at night. About seven o'clock in the morning he returned to his residence from his place of duty and requested his stepdaughter, Gracie, to prepare his breakfast while he put on water preparatory to taking a bath. The daughter called to her brother to get up and cut wood with which to cook breakfast. He replied that he did not care for breakfast, and was told that if he did not cut the wood and failed to get his breakfast he must not say anything about it. The deceased then called the boy and informed him that he intended to make a change in regard to cutting wood and that he, the boy, would have to cut all the wood; that he was tired of his lying around doing nothing. The boy got up and asked the deceased what he said, and deceased repeated that he would have to cut all the wood to do the cooking. At that time the mother of the boy and wife of deceased told her husband to let the boy alone. Deceased grabbed a bed slat from the bed and started to hit the boy with it. His wife grabbed it and got between the deceased and the boy. Deceased reached over her shoulder, threw the slat at the boy and struck him on the shoulder. The boy then run around the house, picked up a bottle, threw it against the house and hit the doorfacing, breaking the bottle to pieces. Just before throwing the bed slat deceased shoved the door against the elbow of his wife, and the boy told the deceased not to hit his mother. Deceased ordered the boy to get his clothes and leave the place. The constable went over about that time and inquired about the trouble. The boy, whose name was Seth Eanes, immediately left the place and went to the place where his older brother, the defendant, was employed, and informed him of what had occurred. Directly appellant and Seth Eanes returned to the residence of the deceased, where they both lived, Eanes going around one side of the house and appellant going in the front door. The deceased in the meantime had seated himself at the table and was eating his breakfast. The State's theory is that while deceased was eating his breakfast appellant approached and stabbed him to death with a knife; that deceased immediately fell over on the floor dead. Deceased was stabbed in the heart, only one wound being inflicted. Appellant's theory of the case, as disclosed by his personal evidence, was when he went in the house it was for the purpose of opening the trunk which contained the clothes of his brother Eanes as well as his own, and that in going into the room where his trunk was he passed immediately by where the deceased was sitting. That deceased immediately got up and the difficulty ensued in which deceased caught him by the collar and throat, and that he, appellant, placed his left arm around the waist of deceased, got out his knife with his right hand, opened it and stabbed him in the heart, thereby claiming self-defense. Appellant was about twenty-one years of age and his half-brother Eanes about eighteen

years of age. He and his brother immediately left the premises and started up the street when he was hailed by an officer. He went to the officer and upon inquiry by the officer appellant stated he had killed deceased, assigning as a reason that the deceased had hit his mother. The State introduced the daughter Gracie, sister of appellant, whose testimony rather excluded the idea of trouble or difficulty between her stepfather and half-brother at the time of the killing.

In this condition of the record appellant offered to prove by the witness Eanes that he, Eanes, had a quarrel with his stepfather, deceased, at his home and that deceased struck his mother, Hattie Bullard, and had driven him, Eanes, away from the place, telling him to get his clothes and leave. That witness clothes were in appellant's trunk, the key to which appellant had. That he went to Mrs. Roos' house where appellant was at work to get the key to the trunk, and he told appellant the above mentioned facts and asked him to let him, Eanes, have the key so that he could get his clothes. That defendant told the witness that he would go and get his clothes for him as soon as he had finished work. That Eanes told appellant in detail everything that had happened at deceased's house that morning. The purpose in offering this testimony was to explain appellant's purpose in going to his home; that is, with a view of getting the clothes for his brother Eanes from the trunk used by the witness and appellant. Upon objection of the State this was excluded. The court qualifies this bill by stating that the prosecution objected to the conversation at the Roos home on the morning of the killing between appellant and his half-brother, on the ground that it was self-serving and hearsay, and because defendant testified that he killed deceased in self-defense. Another bill was reserved in regard to the same testimony when the appellant was testifying in his own behalf and it recited that had he been permitted to do so he would have testified that he was at work at the Roos home on the morning of the homicide, when about eight o'clock his brother, J. C. Eanes, came to where he was at work and informed him that deceased, their stepfather, had mistreated him; that he had struck him with a bed slat; had abused and struck his mother; that deceased had driven Eanes away from home, and that he had come to appellant in order to get the key to the trunk to the end that he could get his clothes. That he told his brother to wait until he, appellant, had finished his work when he would go with him and get his clothes for him. The object and purpose of offering this testimony, as recited in the bill, was to show that he, appellant, went to the house and home of deceased for the sole purpose of getting his brother's clothes from the trunk and without any thought of having any trouble with deceased. The State objected to this and the evidence was excluded with the explanation by the court that the State objected to the conversation between appellant and his half-brother at the Roos home on the morning of the killing, the grounds of objection being

that said conversation was self-serving and hearsay and because defendant testified on the trial of the case that he killed deceased in self-defense. We are of opinion that this testimony was erroneously excluded. Appellant's punishment was fixed at ninety-nine years in the penitentiary for murder in the second degree. It is true that appellant says he went back for the purpose of getting the clothes of his brother, or assisting his brother in getting his clothes; and it is further true that he testifies to his theory of self-defense. It is well settled that the court must charge the different theories of the case presented by the facts adduced on the trial, and that the theories of the defense are not limited by the personal evidence of the accused. Wherever there is evidence adduced favorable to the accused, the law applicable to it should be given in charge, and wherever there is evidence offered which would mitigate the punishment, if the party is guilty, or serve the purpose of acquitting him altogether, or of reducing the punishment from a higher to a lower grade of offense, a charge covering these phases should be given, and wherever this character of evidence is tendered during the trial it is error to reject it. If appellant was informed and believed that his stepfather had struck his mother, it would be adequate cause requiring a charge upon manslaughter as well as for mitigating reasons. The mother is the female relative of her son within the contemplation of the statute. Where the insulting conduct or assaults and matters of that sort occur upon a female relative in the absence of the accused, there is no way for him to ascertain that fact except by being informed. Now, if the brother conveyed the information to appellant that the stepfather had struck his mother, he had a right to prove this. It would have tended to explain, to some extent, at least, appellant's action in killing his stepfather and accounting for his presence at the scene of the tragedy. This does not come within the meaning of self-serving declarations. It was information received by him from another party, and it would have corroborated his statement made to the officer immediately after the killing, that the reason he killed his stepfather was because he had assaulted his mother. We are of opinion, under the circumstances of this case, this testimony should have gone to the jury, and it was of a material character, and not self-serving.

Appellant does not urge any error in the charge. There is another bill of exceptions in the record in regard to statements made by appellant to the officer on the ground he was under arrest. We are of opinion there is no merit in this contention. The officer heard the screaming at the house by the woman, and as appellant went along the street he called to appellant to know the reason of the trouble. It was then that appellant made the statement that he had killed the deceased because deceased had struck his mother. There is nothing to indicate that he was under arrest; however, the officer, immediately after appellant made the statement, arrested him. The officer was not aware there was any cause for arresting appellant until after appellant had made

the statement. So, we are of opinion there is nothing in the contention.

For the error in rejecting the testimony recited in the two bills of exception discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*