ROBERT MASTERS v. THE STATE.

No. 2702.   Decided November 5, 1913.

**1.—Murder—Charge of Court—Threats—Self-Defense.**

Where, upon trial of murder, the evidence raised the issue of threats, the court's failure to charge thereon in connection with self-defense was reversible error.

**2.—Same—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of manslaughter from the standpoint of insult to a female relative as well as from the general circumstances of the case, it was reversible error not to submit these issues.

**3.—Same—Other Causes of Death—Improper Treatment.**

Where, upon trial of murder, the evidence raised the issue of negligence and improper treatment of deceased by others than the defendant, the court's failure to submit said issue was reversible error.

**4.—Same—Self-Defense—Charge of Court.**

See opinion for facts suggesting a more explicit and full charge on self-defense than the one given.

Appeal from the District Court of Houston.   Tried below before the Hon. John S. Prince.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*C. M. Ellis* and *S. A. Denny*, for appellant.—On question of court's failure to charge on manslaughter: Rutherford v. State, 15 Texas Crim. App., 236; Williams v. State, 15 id., 617; Miles v. State, 18 id., 156; Neyland v. State, 13 id., 536; Wadlington v. State, 19 id., 266.

On question of court's failure to charge on threats: Gilcrease v. State, 33 Texas Crim. Rep., 619.

On question of improper treatment of deceased: Morgan v. State, 16 Texas Crim. App., 593; Johnson v. State, 65 S. W. Rep., 92.

*C. E. Lane*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, and given five years in the penitentiary.

It is urged that the court committed error, first, in failing to give in charge the law of manslaughter; second, the law of threats, and, third, the law with reference to negligence or improper treatment of deceased by third parties.   Without going into anything like a detailed statement of the facts, appellant and deceased were brothers-in-law, the deceased having married appellant's sister about a year and a half prior to the homicide.   There was a previous trouble between the parties in which the deceased seems to have been the aggressor.   Threats were made by deceased directly to the defendant prior to the homicide that he would take his life, as well as to others who communicated the threats

to appellant. On the morning of the homicide and prior thereto, the deceased and his mother had intended, and had given notice to that effect, leaving the town of Crockett where they were, and had gone to the depot for that purpose. The deceased had used $300 of his wife's money without her knowledge or consent. With fifty dollars of this amount he had purchased a horse; had traded his horse for another horse and colt. On the morning of the homicide and prior to the supposed departure of deceased and his mother, his wife, appellant's sister, had phoned to the bank to ascertain if she had any money on deposit. She was notified that she had none. She was then aware of the fact that her husband had used all the money and she so swears. She was a State's witness. The deceased returned from the depot to the house where the parties all lived, or had been living, and got the horse and colt, one or both, and had started away when his wife intercepted him and forbade him taking them away. A war of words ensued between them, when he announced his purpose to take them, and she forbade him to do so. While this colloquy and disturbance was going on appellant arrived home and went in the house preparatory to eating his dinner. He was driver of an ice wagon; it was the noon hour, and he had come home for his dinner or lunch. While deceased and his wife were in the yard engaged in their trouble over the horses, the deceased pushed his wife off or struck her two or three times, and she called appellant the third time before he responded. He went into the yard from the house, having procured his pistol, where the parties were, or near where they were. This occurred at the time or just after deceased struck or pushed his wife, appellant's sister, from him, deceased. His sister holloed to appellant, "Robert, come here, come out the back door and make Hubert stop!" Appellant hesitated a little while because he and deceased had had previous trouble, and he says, realizing the fact that deceased had threatened to kill him he did not care to go. After his sister called him third time he did go. He says, "I knew it was my sister and she needed assistance, and I went out there. I went out there and said, 'Hubert, you go and leave Bertha alone, you have been running over her all the while, and you go on and leave her alone,' and he says, 'You go on and attend to your own damn business, you haven't anything to do with me at all,' and at that instance he went for his pocket, his right pocket with his right hand, and I fired immediately. I shot him in the right side." In this connection he says that he shot at his arm in order to stop him from getting his pistol out of his pocket, but missed that and the ball went into his side. It is further shown by the evidence of the attending physician that the wound was not necessarily fatal, and that the life of deceased might have been saved if an operation had been performed. He talked with the doctor about the matter, and he told him that he would pay for the operation, and urged him to have it performed. The doctor wanted to attend to this matter, but was forbidden to operate

Vol. 71 Crim.-39.

upon deceased by his mother who had charge of deceased. It is also in evidence that the mother of the deceased gave the deceased medicine which the doctor told her not to give, and the doctor so testifies, and further testifies that the medicine given was detrimental to deceased and ought not to have been given. It is also shown the mother of deceased sent to the drug store and got the medicine and ·gave it over the command and injunction of the physician. Without going any further into the details of the testimony, this, we think, is sufficient to give a bird's-eye view of the case for the questions raised.

, This testimony raises the issue of threats. The court failed to charge upon this issue in connection with self-defense, and refused special requested instructions presenting this matter for the consideration of the jury. This was error.

Again, this evidence clearly presented the issue of manslaughter from two distinct standpoints, first, the assault and conduct of the deceased toward appellant's sister. She was a female relative within the statute, although she was the wife of deceased. The authorities are clear upon this point. See Stapleton v. State, 56 Texas Crim. Rep., 422; Branch's Criminal Law, sec. 511, for collated authorities. The second phase of manslaughter should be given from the general circumstances of the case, facts and combination of circumstances. The appellant had gone to the rescue of his sister under the circumstances detailed, and further circumstances are in evidence that deceased had threatened to kill defendant, and made a motion to get his pistol, and even if it did not amount to self-defense, these circumstances would present the issue of manslaughter.

Again, we are of opinion the charge with reference to the negligence and improper treatment by others than the defendant should have been given in charge to the jury. See Morgan v. State, 16 Texas Crim. App., 593; Franklin v. State, 41 Texas Crim. Rep., 21.

Upon another trial it is suggested the court be more explicit and full in his charge on self-defense, and present these issues so that defendant may have the benefit of those matters if they arise under the law and facts.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*