ALBERT THERIOT v. THE STATE.

No. 6240.    Decided June 1, 1921.

1.—Murder—Manslaughter—Charge of Court—Prior Difficulty.

Where, upon trial of murder, there was evidence of a previous difficulty, communicated threats and hostile demonstrations, and an assault and battery committed by the deceased immediately before the homicide in threatening words and conduct, which transactions, taken singly might not raise the issue of adequate cause, but taken collectively would warrant a charge on the issue of manslaughter, the same should have been submitted, and a failure to do so was reversible error. Following Pickens v. State, 86 Texas Crim. Rep., 657, and other cases.

2.—Same—Evidence—Opinion Testimony—Argument of Counsel.

Upon trial of murder, a witness for the defendant was asked, on cross-examination if he had not said to a third party that another party not defendant had shot at a fellow and had missed him, but that this party's brother would get him and wouldn't miss him, which the witness denied, it was error to introduce said third party and permit him to testify that the defendant's witness had made this statement, Following Drake v. State, 29 Texas Crim. App., 270, and other cases; and it was also error to permit the State's attorney to argue and draw inferences from this testimony, that the information came from the defendant.

3.—Same—Arraignment—Plea of Not Guilty—Reading Indictment to Jury.

Sub-division 1, of Article 717, C. C. P., provides that the indictment or information shall be read to the jury by the district or county attorney. and the same is mandatory, and where this was not done on trial for murder, the same was reversible error, although defendant had been duly arraigned and entered a plea of not guilty. Following Wilkins v. State, 15 Texas Crim. App., 420, and other cases.

Appeal from the District Court of Jefferson. Tried below before the Honorable E. A. McDowell.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*David E. O'Fiel* and *C. W. Howth,* for appellant:—On question of impeaching evidence: Bright v. State, 10 Texas Crim. App., 68 and cases cited in opinion.

On question of not reading indictment to jury: Essery v. State, 111 S. W. Rep., 929.

*R. H. Hamilton,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Appellant shot and killed Joseph Luquette for which he is under conviction for murder; punishment fixed at confinement in the penitentiary for five years.

There is evidence of previous difficulty, threats on the part of the deceased, and a demonstration immediately preceding the homicide sufficient to raise the issue of self-defense and of intent to execute the threat.

Appropriate instructions were given upon the subject of murder and self-defense, including the law pertaining to communicated threats.

Complaint is made of the failure to instruct the jury on the law of manslaughter. Some six or seven months preceding the homicide, Darby, a half-brother of the appellant, and the deceased engaged in a difficulty over an alleged written communication addressed by the deceased to the wife of Darby. There was evidence that some three days before the death of the deceased, while Darby and appellant were together, deceased renewed the difficulty, accompanied by a simple assault upon the appellant and threats to take the life of both. Darby fired at deceased.

It seems that the appellant and the deceased were employees of a Refining Company, and that on the day of the homicide appellant went to the plant of the company to receive his wages. The deceased, according to the evidence of several witnesses, seeing the appellant, approached him, caught him by the shoulders and turned him around, and in an angry manner declared that they would then settle the argument. One witness said: "This young man, the defendant, appeared to be very much excited and afraid. He impressed me as being afraid of the dead man. I think the other man was larger and stronger than this boy, and he looked to be well built and a matured man. He appeared to be angry, and appellant impressed me as wanting to avoid trouble."

Appellant was about eighteen years of age while the deceased was about twenty-one years old.

The appellant said that as he was walking to the street car with a number of others, the deceased approached him, grabbed him by the shoulder and turned him around and said: "Well, here's where we settle that argument. You and your brother shot at me and missed me. I would just as well be dead as not." The deceased, according to the appellant, looked angry, and appellant believed that he was about to be shot; that the deceased walked back and forth several times continuing

his conversation; that immediately before the shot was fired, deceased walked away, and upon his return, made a quick move indicating that he was going to shoot and kill appellant, that appellant then shot him.

It was appellant's contention that bearing upon the issue of manslaughter was the evidence of previous difficulty, communicated threats, and hostile demonstrations (Williams v. State, 61 Texas Crim. Rep., 356, 136 S. W. Rep., 771), evidence of sudden meeting, fear and excitement upon the part of the accused (Anderson v. State, 60 Texas Crim. Rep., 314, 131 S. W. Rep., 1124; Howard v. State, 23 Texas Crim. App., 265, 5 S. W. Rep., 231). There was also evidence of an assault and battery committed by the deceased immediately before the homicide, and threatening words and conduct. Doubtless, singly, neither the assault or any one of the matters mentioned might be adequate cause, but taken collectively and viewed in the light of the previous relation between the appellant and deceased, we think the court was not warranted in refusing appellant's request to submit to the jury the issue of manslaughter. Wadlington v. State, 19 Texas Crim. App., 274; Masters v. State, 71 Texas Crim. Rep., 608, 160 S. W. Rep., 693; Reed v. State, 9 Texas Crim. App., 318; Rutherford v. State, 15 Texas Crim. App., 247; Nelson v. State, 48 Texas Crim. Rep., 274; Pickens v. State, 86 Texas Crim. Rep., 657, 218 S. W. Rep., 758.

The witness Verette, for the appellant, was asked by the State's counsel, upon cross-examination, if he had not said to one Bohlin that Frank Darby "had shot at a fellow and had missed him, but that Darby's brother would get him and wouldn't miss him." The witness having denied making this statement, Bohlin was called and testified that Verette had made the statement. So far as the inquiry made of Verette bore upon the issues involved, it sought to obtain his opinion that the appellant would shoot the deceased and would not miss him. The opinion of Verette to this effect was not material or legitimate testimony. The impeachment of him was not authorized. Drake v. State, 29 Texas Crim. App., 270, and other cases collated in Branch's Ann. Penal Code, Sec. 175. The testimony thus adduced was used against the appellant in argument, the prosecution seeking to draw therefrom the inference that Verette had made the statement, which he denied, and which was attributed to him by the witness Bohlin, and that in making it he was acting upon information obtained from the appellant. We find no evidence to support this inference and are of the opinion that the use made of the testimony was improper. Even from the State's standpoint, the evidence had no place in the record other than to discredit Verette, and could not have been available as a substantive fact against the appellant. The Court, on appellant's request, should have admonished the jury to disregard the argument Exception was made to the ruling of the court in the admission of the testimony and the use made of it, and is properly brought forward for review.

To one of appellant's bill of exceptions, the court appends the following qualification:

"When this case was called for trial and after announcement of ready by State and defendant, the defendant was by the county attorney duly arraigned, duly entered the plea of not guilty. But after the empannelling of the jury the indictment was not read to the jury. But the defendant having shown no injury suffered by him by reason of the failure to read said indictment, and the Court believing the statute on this subject to be directory, the motion for a new trial was overruled."

Article 717 declares, concerning the method of trial, that:

"A jury having been impaneled in any criminal action, the cause shall proceed to trial in the following order:

1. The indictment or information shall be read to the jury by the district or county attorney.

2. The special pleas, if any, shall be read by the defendant's counsel, and if the plea of not guilty is also relied upon, it shall also be stated."

The character of subdivision 1 of this statute, whether mandatory or directory, has been the subject of judicial interpretation. In Wilkins v. State, 15 Texas Crim. App., 420, the provision was held mandatory. The court said:

"We are of the opinion that a failure to read to the jury, on the trial of a felony case, the indictment, must be regarded as an omission from which we must apprehend that injury may have resulted to the defendant. . . . We think the reading of the indictment to the trial jury, in a felony case, is mandatory and essential, and that, were we to hold to the contrary, it would be establishing a loose and dangerous practice, and one which would be in a direct contravention to the plainly expressed will of the Legislature."

Commenting upon this and other cases to the same effect, Judge RAMSEY, in writing the opinion of this court, in Essary v. State, 53 Texas Crim. Rep., 603, said:

"The indictment is the basis for the prosecution. Among other things, its office is to inform the appellant of the charge laid against him and one of the purposes of the requirement that it shall be read to the jury at the beginning of the prosecution is to inform them in precise terms of the particular charge laid against the defendant on trial. His plea thereto makes the issue. While it may be thought that this ground of objection is in its nature quite technical, it is, nevertheless, the right of every defendant to have the charge read against him and to have his plea entered therein. Such is the express provision of our statute and this right has been recognized time out of mind by all the decisions of this court. It is of such a substantial nature that in all the decisions of this court it has been treated and regarded as mandatory. That it can be waived is well established but such a waiver cannot be inferred but in a case where the statute has been disregarded

the burden rests upon the State to show such conduct and acts upon the part of the defendant as may, in fairness, be treated and regarded as a waiver. In a case involving life and death, it is always unsafe to depart from that order of procedure established by law in this State. This, it clearly appears, was done in this case. No reason is given why it was so done except as we may infer that the failure to follow the statute was the result of mistake or inadvertence. When discovered the error was not cured by the reintroduction of the testimony or any offer so to do, and under the rule obtaining in this State for all these years, the failure to observe this mandatory provision regulating the control of trials, must be held, as we do now hold to be, in itself, violative of his rights and hurtful to his interest."

The State, through its Assistant Attorney General, concedes that the learned trial judge was in error in refusing a new trial upon the ground that it was affirmatively shown that the indictment was not read to the jury which tried and rendered against him the verdict of guilty. We are constrained, in view of the record before. us and the precedents cited, to concur in this view. For this and the other errors to which we have adverted, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*