**Adolph O. BOENING, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40769.**

Court of Criminal Appeals of Texas.

Nov. 8, 1967.

Rehearing Denied Jan. 24, 1968.

Lee P. Ward, Jr., Carl E. F. Dally, Houston (on appeal only), for appellant.

Raymond L. Kneese, Dist. Atty., Richard Hoester, County Atty., Fredericksburg, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder without Malice under the provisions of Article 802c, Vernon's Ann.P.C., the punishment assessed by the jury, two (2) years confinement in the Texas Department of Corrections.

In his first ground of error appellant contends the evidence is insufficient to sustain the conviction because it does not show that Irma Chapa (the alleged decedent) was, in fact, one of the girls struck by appellant's automobile; or how Irma Chapa came to her death; or that Irma Chapa's death was caused by criminal means.

This ground of error requires that we review the evidence presented at some length. At the outset we conclude that the record amply supports the fact that the appellant drove the automobile in question on September 9, 1965, and that at such time he was intoxicated.

Julia Chapa testified that on September 9, 1965, she lived in the city of Fredericksburg in the rear of the Henke's store located at Travis and Llano Streets with her husband and four daughters, including nine year old Irma Chapa; that on said date

about 6 p. m. she sent Irma to the Weiershausen station located 4 or 5 blocks from their home for eggs, bread, Pet milk, newspaper, etc.; that Irma was accompanied by Janie Sanchez; that Irma never returned home; that the next time she saw Irma was at a funeral home in Bruni and that Irma was dead.

Walter Weiershausen, the proprietor of a service station and grocery store in Fredericksburg at 812 N. Llano Street, testified two Latin American girls, whose ages were approximately eight or nine years old, and whose names he did not know, came to his store between 5 and 6 o'clock p. m. on September 9, 1965, and purchased a dozen eggs, a newspaper and some candy.

Gary Heimann, a 13 year old eighth grade school boy, testified that while riding his bicycle and waiting to cross the street at the Weiershausen station at a time between 5:30 and 6:00 p. m. on September 9, 1965, he saw a white Ford automobile run upon the curb and hit two little girls. He related that following the collision he saw one girl lying face down and the other lying in a driveway crying; that groceries were scattered "all over the place."

Milton Weed, while driving home after work, observed through his rear-view mirror appellant's car strike two girls on Llano Street. He estimated the time to be approximately "five, ten," or "fifteen minutes until 6:00" p. m. on September 9, 1965.

Anthony Juarez, who lived in the same yard behind Henke's store where the Chapas had their trailer house, testified he knew Irma Chapa and Janie Sanchez, Irma's father, Osberto, and Osberto's wife Julia. On his way home from work after 5 p. m. on September 9, 1965, Juarez saw Irma Chapa and Janie Sanchez on Llano Street eating candy. He warned them to "be careful for the cars." He related that later he heard a noise "when it comes that car," and then observed the little girls on the

ground in positions similar to that described by Gary Heimann. Subsequently, in his interrogation Juarez did indicate some uncertainty about the first names of the little girls, but reiterated that their last names were Chapa and Sanchez and that the one that got killed was Chapa.

Jimmy Kuhlman, the City Marshall of Fredericksburg, testified that at 5:55 p. m., September 9, 1965, he responded to an accident call and when he arrived in the 700 block of N. Llano, he observed a vehicle (a white 1960 Ford) in a yard, a broken pole and appellant beside his car in an intoxicated condition; that he saw one girl lying in the street but he could find no pulse in her wrist or neck;[1] that another girl lying near a driveway was alive and was crying and screaming.

Marshall Kuhlman took a number of pictures at the scene, including one of the little girl lying in the street. These photographs were admitted into evidence before the jury, but they have not been included in the record, though are available to this Court. See Article 40.09, Sec. 15, Vernon's Ann.C.C.P.

Dr. Edward Stein, Jr., a physician, was on duty at Keidel Memorial Hospital in Fredericksburg at approximately 6 p. m., September 9, 1965, when the body of a Latin American girl was brought in. He testified that she was dead on arrival; that he did not know her name but estimated her age at ten years; that from his examination she probably died from head and neck injuries, but without an autopsy he could not be sure; that shortly after the arrival of the body the appellant was brought to him for the purpose of having a blood sample extracted.

G. B. Worley, Justice of the Peace, Precinct No. 1 of Gillespie County, testified he made out a death certificate for one Irma Chapa on September 9, 1965. He was not

---

1. At the examining trial this witness identified the dead girl as Irma Chapa. He was not questioned as to her identity at the trial on the merits, nor does it appear that the examining trial testimony was introduced before the jury.

permitted to testify to the information he had placed on said certificate, but did state that he "saw the body." He subsequently related that he went to the scene of the accident that day, but the little girls had already been removed; that he did observe some eggs and groceries scattered about at the scene, a broken telephone post and a Ford car up in a man's yard; that he went to the Schaetter's Funeral Home in Fredericksburg and viewed and examined the dead body of "this" little girl "which was broken up pretty bad."

Osberto Chapa, a resident of Bruni, Texas, testified he and his family resided right behind Mr. Henke's store at Llano and Travis Streets in Fredericksburg, Texas, on September 9, 1965; that they were the only Chapa family in the neighborhood; that he knew Anthony Juarez; that his daughter Irma was killed in 1965; that he had three children left.

Oliver J. Schaetter of the Schaetter Funeral Home who also operated an ambulance service, received a call at approximately 6 p. m. on September 9, 1965. As a result Schaetter in one car and his father in another car went to the 700 block of North Llano Street. There he found two Latin American girls between seven and ten years of age who were injured. He took one girl to the Fredericksburg Hospital and Clinic and his father took the body of the other girl to another hospital. He testified that the body of a girl he had seen "at the scene" was brought to the funeral home by his father, and he embalmed it; that he had determined the body was that of the little Chapa girl. Schaetter related that "later that evening" he went to the Chapa home where he was shown photographs of the Chapa children including the "little girl." He could not, however, recall the first name of the father.

It is observed that the trial court did not conclude that it was necessary to charge the jury on the law of circumstantial evidence nor do we find that appellant ex-cepted or objected to the court's charge, or requested such a charge.

It would appear from the record that Irma Chapa was in apparently good health when she left her home on September 9, 1965, and when we view the evidence, as we are required, in the light most favorable to the State, we conclude that the evidence is sufficient to sustain the conviction. Appellant's first ground of error is overruled.

In his second ground of error the appellant urges that the State failed to read the indictment to the jury in accordance with Article 36.01, V.A.C.C.P., and that such failure constitutes reversible error.

Article 36.01(1), (former Article 642), supra, provides in part that after the jury is impaneled in any criminal action "[t]he indictment or information shall be read to the jury by the attorney prosecuting." Failure to do so constitutes reversible error. Essary v. State, 53 Tex.Cr.R. 596, 111 S.W. 927; Theriot v. State, 89 Tex.Cr.R. 428, 231 S.W. 777; Johnson v. State, 118 Tex.Cr.R. 291, 42 S.W.2d 782.

After the jury was impaneled and sworn in the case at bar, the transcription of the court reporter's notes reflects the following:

"The Court: The Defendant will arise and approach the bench. You will read the indictment.

(At which time, the indictment was read by the District Attorney.)

"The Court: To which the Defendant pleads, guilty or not guilty?

"The Defendant: Not guilty, Your Honor.

"The Court: You want to make a statement to the jury?

"Mr. Kneese: No, sir, I'm not going to make a statement.

"Mr. Ward: I have no statement.

"Mr. Kneese: Call Julia Chapa.

"Mr. Ward: We will envoke the Rule then, Your Honor."

The foregoing clearly demonstrates a compliance with Article 36.01, supra.

Appellant, nevertheless, contends that the foregoing was an arraignment as required by Article 26.01, V.A.C.C.P., rather than a compliance with Article 36.01(1), supra.

Article 26.01, supra, does require a statutory arraignment in all felony cases and in all misdemeanor cases punishable by imprisonment. This statutory arraignment, not to be confused with taking an accused before a magistrate (Article 15.17, V.A.C.C.P.), was formerly required only in capital cases. See former Article 491, V.A.C.C.P. Such arraignment, not being a part of trial by jury, is for the purpose of reading the indictment to the accused, hearing his plea thereto and fixing his identity. Article 26.02, V.A.C.C.P.; Steen v. State, 92 Tex.Cr.R. 99, 242 S.W. 1047. The time for such arraignment is prescribed by Article 26.03, V.A.C.C.P.

The judgment entered in the case at bar clearly reflects that sometime before the parties announced ready for trial the appellant was "duly arraigned" and that after the impanelment of the jury the indictment was read to the jury.

If such recitations in the judgment were not correct, then we observe that no objections to the approval of the record were offered by the appellant prior to or at the hearing on the approval of the record conducted by the trial judge as authorized by Article 40.09, Section 7, V.A.C.C.P.

We further call attention to the provisions of Article 44.24, V.A.C.C.P. (Presumptions on Appeal) which requires this Court to presume, among other things, that the defendant was arraigned unless such matter was made an issue in the court below, or unless it affirmatively appears to the contrary from the record.

Appellant's second ground of error is overruled.

In his third ground of error appellant complains that the trial court erred in permitting the witness Oliver Schaetter to testify that he had determined that the body he had at the funeral home was that of the little Chapa girl over objection that the same was hearsay. We cannot agree.

In Rodriguez v. State, Tex.Cr.App., 398 S.W.2d 124, when confronted with a similar situation, this Court said:

"The objection was never ruled upon by the court. However, the answer of the witness does not appear to be hearsay. The source of her knowledge was not shown. No motion was made to exclude it or to instruct the jury not to consider it. No error is presented."

In the case at bar the source of the witness' knowledge is not shown. It was therefore incumbent upon appellant to reinforce his objection by demonstrating to the court that such testimony was in fact hearsay. This he failed to do. If it be his contention that subsequent testimony did indicate that the witness' earlier answer was hearsay, we note that at no time did he move to exclude the same or to have the jury instructed not to consider the same.

Appellant's third ground of error is overruled.

We have carefully considered appellant's other grounds of error urged in his brief filed in the trial court relating to the introduction of certain photographs and evidence of appellant's blood test and find them to be without merit.

The judgment is affirmed.