Michael Eugene SHARP, Appellant,

v.

The STATE of Texas, Appellee.

No. 69301.

Court of Criminal Appeals of Texas,
En Banc.

April 9, 1986.

Glen Williamson, Andrews (Court-appointed), for appellant.

Michael L. Fostel, Dist. Atty., and Stephen Taliaferro, County Atty., Kermit, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

WHITE, Judge.

This case is on appeal from a conviction for the capital murder of Brenda Kay Broadway, which occurred in Winkler County in June of 1982. The case was tried in Crockett County on a change of venue. Appellant was found guilty, sentenced to death, and thereafter gave notice of appeal. Appellant has submitted his brief to this Court pursuant to the provisions of Arts. 40.09 and 37.071, V.A.C.C.P., and seeks either a reversal of the judgment and dismissal of the charges against him or, in the alternative, a new trial.

The testimony in the trial court revealed the following sequence of events:

On Friday, June 11, 1982, at approximately 12:30 a.m., Brenda Kay Broadway, the victim herein, returned home from work. She and her two children, Christy Michelle Elms, age 8, and Salina Kay Elms, age 14, then left their home to go wash Brenda's car. Soon after they arrived at the car wash, appellant forced Brenda and her two daughters, at knife point, into his truck and began driving south from Kermit on the Monahans highway. After appellant made Brenda and the two girls remove their clothes, he turned off the highway onto a dirt road, tied them with rope, and forced Salina and her mother to perform deviate sexual acts upon each other.

Appellant then began to stab Brenda. At this point, Salina, the only surviving eye-witness, worked her legs free and escaped. Salina stated that she wandered through the woods the majority of the early hours of June 11, 1982, stopping only to rest. Near dawn, Salina came upon a drilling rig, where the men there untied her, gave her a blanket to cover herself, and called police. The police transported Salina to a local hospital. The bodies of Brenda Kay Broadway and Christy Michelle Elms

were found in a shallow grave later that morning by a search party, made up of deputy sheriffs from Winkler and Ward Counties.

On Monday morning, June 14, Winkler County Deputy Sheriff Mike Eggleston, based on a composite sketch and a statement taken from Salina, obtained an arrest warrant for appellant. Several officers went to the drilling rig where appellant worked, but appellant was not there. After hearing that appellant was possibly en route to Louisiana, Deputy Eggleston wired several police departments along a probable route. Appellant was arrested pursuant to the arrest warrant in Sweetwater on June 16, 1982.

We will first address the appellant's ground of error twenty alleging insufficiency of the evidence. Appellant contends that because there are discrepancies in the only eyewitness' testimony, and differences in the explanation of certain circumstantial evidence, there is no more than a strong suspicion or mere probability of appellant's participation in the offense charged.

In reviewing a sufficiency of the evidence claim, this Court has held that the standard for review is the same for both direct and circumstantial evidence. *Wilson v. State*, 654 S.W.2d 465, at 471 (Tex.Cr. App.1983) (opinion on rehearing); *Denby v. State*, 654 S.W.2d 457, at 464 (Tex.Cr.App. 1983) (opinion on rehearing); *McGoldrick v. State*, 682 S.W.2d 573 (Tex.Cr.App.1985). See also *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App.1981) (opinion on rehearing 1983).

In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), reh.den. 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126, the United States Supreme Court held that the standard for judging sufficiency questions would be whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. 443 U.S., at 319, 99 S.Ct. at 2789.

In the present case, Salina Kay Elms, the only eyewitness, affirmatively stated appellant was the person who committed the kidnapping and murder of the deceased. Appellant makes issue of slightly different descriptions by Salina of a tatoo she noticed on appellant, and the discrepancy between Salina's and W.C. Stokes' [appellant's supervisor] testimony concerning the existence of white lettering on the doors of appellant's company truck. The jury, being the judges of the facts and credibility of the witnesses, could choose to believe or not believe the witnesses, or any portion of their testimony. *Esquivel v. State*, 506 S.W.2d 613 (Tex.Cr.App.1974). Further, a witness may be believed even though some of his testimony may be contradicted and part of his testimony recorded, accepted, and the rest rejected. See *Jackson v. State*, 505 S.W.2d 916 (Tex.Cr. App.1974). Even a total failure, (not the case here), to identify the defendant on one occasion goes only to the weight of that person's testimony, not its admissibility. *Wilson v. State*, 581 S.W.2d 661, at 665 (Tex.Cr.App.1979) (opinion on rehearing).

Ground of error twenty is overruled.

In his first ground of error, appellant claims the indictment in the instant case, cause no. 2971 (Crockett County cause no. 1420), should have been dismissed under Art. 32A.02, V.A.C.C.P., because the State did not announce ready until December 6, 1982, more than 120 days after commencement of the proceedings on June 16, 1982. See Art. 32A.02, Secs. 1(1) and 2(a). Therefore, according to appellant, under our holding in *Pate v. State*, 592 S.W.2d 620 (Tex.Cr.App.1980), the State could not have possibly been ready within the 120 day requirement of Art. 32A.02, Sec. 1(1), V.A. C.C.P.

Due to the complexity of this contention, we will set out the procedural history of this case.

The Winkler County grand jury returned an indictment against appellant on June 21, 1982 for the capital murder of Brenda Kay Broadway in cause no. 2919. The State announced ready on August 31, 1982. This

case, with another, charging the capital murder of Christy Elms, was transferred to Lubbock County on a change of venue. The date of this transfer does not appear in the record. In a trial in Lubbock which was concluded on November 17, 1982, appellant was convicted of killing Christy Michelle Elms and sentenced to life imprisonment. However, it is not apparent whether the conviction was for capital murder or murder. See Arts. 19.02 and 19.03, V.A.C. C.P.

On November 24, 1982, a Winkler County grand jury re-indicted appellant for the capital murder of Brenda Kay Broadway, cause no. 2971. The State announced ready in cause 2971 on December 6, 1982. At this point in time, there were two indictments pending and two announcements of ready for the same offense, namely, the capital murder of Brenda Kay Broadway.

The State elected to try cause no. 2971 (the Nov. 24, 1982 indictment) and not 2919 (the June 21, 1982 indictment). Both parties stipulated that a trial in one cause would be a bar to a trial in the other. On March 7, 1983, cause no. 2971 was transferred to Crockett County on a change of venue.

■ It is the State's contention that the time spent in the Lubbock trial for the murder of Christy Michelle Elms is excludable from the time computation in the present case because under Art. 32A.02, Sec. 4(1), V.A.C.C.P.[1] the Speedy Trial statute is tolled when a defendant is involved in trials on other charges.[2] The State also contends that when a subsequent indictment for the same offense is returned by the grand jury, the State's announcement of ready for the first case carries to the subsequent case a previous compliance with any speedy trial time limits. In other words, if the announcement of ready in

cause no. 2919, made on August 31, 1982, complied with Art. 32A.02, supra, the State asserts that a subsequent indictment which would not satisfy the time limits of Art. 32A.02, supra, on its own, would be validated for speedy trial purposes by a previous announcement of ready for the same case which complied with Art. 32A.02.

While the time spent in Lubbock would be excludable as another matter involving the appellant, see Art. 32A.02, Sec. 4(1), V.A.C.C.P., it is unclear in this case just exactly how much time was spent in Lubbock. However, we find the State's alternative contention to be meritorious, so the amount of time spent in the Lubbock trial is irrelevant for the disposition of this ground of error.

■ In *Ward v. State*, 659 S.W.2d 643 (Tex.Cr.App.1983), this Court held when a defective information (filed within the statutory period) was replaced with a valid information after the time period had run, there was no speedy trial issue. We rejected the requirement of a valid charging instrument to show the State's readiness for trial. Further, we held that *Pate*, supra, was distinguishable because no charging instrument was *ever* filed, and a trial cannot be had unless there is some type of pleading, but in *Ward*, supra, the charging instrument and the State's announcement of ready were within the time limits of Art. 32A.02. A defective charging instrument does not, in and of itself, indicate the State was not prepared for trial on the day it announced "ready." See *Ward*, supra, at 647.

In the instant case, it is unclear whether the indictment in cause no. 2919 (the first capital murder indictment) was actually defective because that indictment is not in the record. The only facts before us are that a subsequent indictment was returned by the

---

1. "Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

"(1) a reasonable period of delay resulting from other proceedings involving the defendant, including but not limited to proceedings for the determination of competence to stand

trial, hearing on pretrial motions, appeals, and trials of other charges."

2. As noted before, the indictment in the instant case had also been transferred to Lubbock County along with the case involving Christy Michelle Elms.

Winkler County grand jury. However, if a *defective* indictment, filed within the time limits of Art. 32A.02, can be replaced with a valid one filed after the time has run, under *Ward*, supra, we see no reason why an indictment, either defective or valid, which complied with Art. 32A.02, could not be replaced with a second valid indictment filed after the allotted time. The pre-trial statement of facts indicates that both indictments alleged the capital murder of the same victim. We find no error. Ground of error one is overruled.

Appellant's second ground of error is that the trial court committed reversible error by not reading the indictment to the jury *or* taking his plea in the presence of the jury. Appellant cites *Essary v. State*, 53 Tex.Cr.R. 596, 111 S.W. 927 (Tex.Cr. App.1908); *Theriot v. State*, 89 Tex.Cr.R. 428, 231 S.W. 777 (Tex.Cr.App.1921); and *Peltier v. State*, 626 S.W.2d 30 (Tex.Cr. App.1981), as authority that the provisions of Art. 36.01(1), V.A.C.C.P., are mandatory. Article 36.01, V.A.C.C.P., reads in relevant part:

"A jury being impaneled in any criminal action, the cause shall proceed in the following order:

1. The indictment or information shall be read to the jury by the attorney prosecuting...."

The State maintains that appellant failed to make issue in the trial court because there was no objection. The State also claims a motion for new trial is insufficient to affirmatively show error in the record, and alternatively, if a motion for new trial is a proper method to show error, then appellant's is insufficient to overcome the presumption in Art. 44.24(a), V.A.C.C.P.

By its express terms, Art. 44.24(a), supra, prescribes a presumption of regularity in the proceedings unless (1) the error has been brought to the attention of the trial court; or (2) there is an affirmative showing to the contrary in the record. See Art. 44.24(a), V.A.C.C.P. Appellant made no objection at trial, so the only part of Art. 44.24(a) that is applicable is whether there exists an affirmative showing to the contrary in the record. See *Warren v. State*, 693 S.W.2d 414, at 416 (Tex.Cr.App.1985).

The issues to be decided then, under the facts of this case, are: First, is a motion for new trial a proper method to apprise the court contrary to the presumption created in Art. 44.24(a); and second, assuming a motion for new trial is proper, was *appellant's* motion for new trial adequate?

■ A motion for new trial is a proper method to show error in the record. *Warren*, supra, at 416; *Mays v. State*, 51 Tex. Crim. 32, 101 S.W. 233 (1907); and *Noble v. State*, 50 Tex.Crim. 581, 99 S.W. 996 (1907). However, we find that *appellant's* motion for new trial was insufficient to overcome the presumption created by Art. 44.24(a).

■ Appellant's contention that the indictment was *never* read to the jury is unsupported by his motion for new trial. The motion for new trial contains an affidavit of the court reporter stating that the indictment was read to appellant during his arraignment, outside the presence of the jury. Appellant filed a motion with the court to arraign him outside the presence of the jury, before the trial. There is no dispute that appellant requested to be and was arraigned outside the presence of the jury. Thus, the court reporter's affidavit contains only facts that are uncontested. The issue the affidavit should have addressed is whether the indictment was ever read *to the jury* and a plea taken *before the jury*. These facts, or their absence, were never mentioned in the affidavit of the court reporter; consequently, an affirmative showing in the record contrary to the presumption of Art. 44.24(a) has not been made. Therefore, *Peltier*, supra, *Theriot*, supra, and *Essary*, supra, are not controlling. Additionally, the judgment of the court and the docket sheet both state the indictment was *read to the jury* and a *plea was taken before the jury*. Finally, appellant's attorney had an opportunity to review the record and made no objection concerning the judgment or docket sheet. His claim now is insufficient to overcome the presumption created by the judgment.

*Ward v. State,* 168 Tex.Crim. 493, 329 S.W.2d 887 (1959); *Ward v. State,* 160 Tex. Crim. 328, 268 S.W.2d 669 (1954). Ground of error number two is overruled.

■ Appellant's third ground of error is that all evidence seized from a warrantless search of a 1981 pickup truck is not justified by any exception to the warrant requirements and should have been suppressed. The State's response is that a valid consent to search the truck was given by appellant's supervisor, who had control over the vehicle. Third persons can consent to searches if they have control over and authority to use the premises being searched. *Lowery v. State,* 499 S.W.2d 160, at 165 (Tex.Cr.App.1973). We see no reason why such a rule for homes and buildings should not apply to automobiles as well. Therefore, if appellant's supervisor had authority and control over the pickup, then he had the power to consent to its search, regardless of its location.

■ It is a question of fact whether the consenting person has a right to use or occupy a particular area, or automobile, and whether that right is sufficient to justify permitting a search. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Lowery,* supra, at 166. W.C. Stokes, appellant's supervisor, testified, outside the presence of the jury, that he had unconditional authority to assign or reassign trucks to all the tool pushers under his supervision, one of whom was appellant. This testimony was not controverted or impeached by appellant. Appellant's motion to suppress was then overruled and the testimony was repeated before the jury.

We find the degree of control exhibited by appellant's supervisor sufficient enough to establish a valid consent, dispensing then with the requirement of a search warrant. Appellant's third ground of error is overruled.

■ Appellant's fourth ground of error is that the trial court erred by not excluding evidence obtained as a result of his arrest, specifically evidence concerning his lineup. He claims the affidavit upon which the warrant was obtained made only legal conclusions and did not state facts sufficient to justify a finding of probable cause, and was invalid. Therefore, all evidence which was obtained as a result of this arrest was erroneously admitted at trial.

We need not consider the validity of appellant's complaint because the affidavit complained of is not in the record before us. It is incumbent upon an appellant to insure that an affidavit complained of is properly included in the appellate record. *Dusek v. State,* 467 S.W.2d 270 (Tex.Cr. App.1971); *Haynes v. State,* 468 S.W.2d 375, at 377 (Tex.Cr.App.1971), cert. den. 405 U.S. 956, 92 S.Ct. 1180, 31 L.Ed.2d 233 (1972). Appellant's fourth ground of error is overruled.

■ Appellant, in his fifth ground of error, alleges that the trial court erred in allowing testimony of a police officer to bolster the testimony of another witness *before* that witness had testified and had been impeached. Salina Kay Elms, the only eye-witness to the crime, identified the appellant in a post-arrest lineup, and also at the trial. At appellant's trial, before Salina testified, the police officer who conducted the lineup testified that Salina had identified appellant in the lineup. Appellant's attorney had filed a pre-trial motion to suppress an illegal identification which included an objection to the introduction of testimony that would be cumulative and bolster the testimony of the sole identifying witness, Salina Kay Elms. This motion was overruled and a hearing denied, to which appellant's attorney excepted.

Appellant claims *Lyons v. State,* 388 S.W.2d 950 (Tex.Cr.App.1965), mandates a reversal because there was no way to impeach Salina Kay Elms before she testified. *Lyons,* supra, stands for the proposition that while a witness who has identified his assailant at trial may also testify as to an identification at a lineup, but other witnesses may not bolster that testimony until it has been impeached. This would be controlling in this case but for the exception in *Frison v. State,* 473 S.W.2d 479, 482 (Tex.

Cr.App.1971), and followed in *Franklin v. State*, 606 S.W.2d 818, 823–4 (Tex.Cr.App. 1978), (rev'd on rehearing on other grounds, 1979), holding that if bolstering testimony is erroneously admitted in the trial court before the identifying witness is impeached, the error is cured by impeaching or attempting to impeach the identifying witness, even if this is subsequent to the bolstering testimony.

Appellant sought to impeach Salina Kay Elms when she took the stand by pointing out discrepancies between her direct testimony and prior statements she made concerning appellant's description. We hold this cross-examination to be within the exception in *Frison*, supra, and accordingly overrule appellant's fifth ground of error.

 Appellant's sixth ground of error is that the trial court erred by allowing the prosecuting attorney to question a witness from a transcript of a tape recording when the best evidence was the tape recording itself. The State prosecutor said he had no objection to playing the tape; however, neither the tape nor the transcript were offered into evidence by either appellant or the State. Appellant's attorney had access to the tape. The best evidence rule does not apply when the item in question is not admitted into evidence to prove its contents. See *Green v. State*, 617 S.W.2d 253 (Tex.Cr.App.1981). Additionally, the best evidence rule only applies to documents. *Henriksen v. State*, 500 S.W.2d 491, at 495 (Tex.Cr.App.1973). Appellant's contention is without merit.

 Appellant's seventh, eighth, ninth, tenth, and eleventh grounds of error concern the testimony of Detective Jerry Smith about oral statements made by appellant while in custody. Detective Smith, over objection, was allowed to testify during the punishment phase of appellant's trial about conversations he had with appellant concerning the disappearance, death, and recovery of the body of one Blanca Arreola.

Appellant's seventh ground is that this testimony came as a total surprise and unfairly prejudiced his right to a fair and impartial jury trial in violation of Art. 39.-14, V.A.C.C.P., the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Sec. 10 of the Texas Constitution. We find appellant's claim to be unsupported by the record.

Detective Smith testified that he had been issued a subpoena duces tecum ordering him to appear on the day of appellant's trial and bring the complete file of the Odessa Police Department concerning the death of Blanca Arreola. He further stated that the subpoena duces tecum was obtained by the defense, but that appellant's attorney had never asked to see the file. We fail to see how appellant was surprised. Additionally, in *Milton v. State*, 599 S.W.2d 824 (Tex.Cr.App.1980), (on motion for rehearing, 620 S.W.2d 115 (Tex.Cr.App.1980)), cert. den. 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981), reh. den. 453 U.S. 923, 101 S.Ct. 3160, 69 L.Ed.2d 1006 (1981), we held that notice was not required to be given to the defendant before evidence of extraneous offenses are introduced. Ground of error seven is overruled.

 Ground eight is that the prosecuting attorney affirmatively represented to the Court that no such oral statements were made by appellant and none would be used by the prosecution, in violation of Articles 39.14 and 38.22, V.A.C.C.P., the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 of the Texas Constitution.

Ground nine is that the State did not show compliance with Article 38.22, V.A.C.C.P., said statements not being reduced to writing nor electronically recorded, and made while appellant was in custody.

Ground ten is the same as ground nine but adds that the statements were made while appellant was represented by counsel.

 Ground of error eleven is that there was no showing by the State of a voluntary waiver by the appellant under Art. 38.22, Sec. 2(a) [sic]. Before Detective

Smith testified at the punishment phase, appellant made the following objection:

"MR. FOSTEL: [Prosecuting attorney] We call Jerry Smith.

"MR. WILLIAMSON: [Defense attorney] Your Honor. I have just been advised by the prosecutors as to what this proposed testimony of this witness is going to be and I want to object at this time as being inadmissible evidence of extraneous offenses and it is not admissible at this stage of the trial and we object to it on that ground.

"THE COURT: The objection is overruled.

"MR. WILLIAMSON: Note my exception. May I have a continuing objection to everything this witness says, Your Honor, without waiving my objection?

"THE COURT: Yes. You may have a running objection."

This objection is insufficient to preserve the alleged errors appellant now complains of. An error presented on appeal must be the same as the objection raised at trial. *Vanderbilt v. State*, 629 S.W.2d 709 (Tex. Cr.App.1981), cert. den. 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.1980). We find grounds eight through eleven to be without merit.

■ Appellant, in his twelfth ground of error, alleges that the testimony of Detective Smith, during punishment, was admitted in violation of Art. 37.07 and Art. 37.- 071, V.A.C.C.P. Although this ground of error is properly preserved by the objection which forms the basis for grounds seven through eleven, supra, it is not a meritorious contention. Evidence of unadjudicated offenses is admissible at the punishment phase of a capital murder case. *Rumbaugh v. State*, 629 S.W.2d 747 (Tex.Cr. App.1982); *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981). Ground of error twelve is overruled.

■ Ground of error thirteen is that the trial court commented upon the weight of the evidence when he was addressing the entire jury panel by stating "His guilt is established beyond a reasonable doubt", in violation of Article 38.05, V.A.C.C.P. To evaluate the merit of appellant's claim, we must first determine if the statement complained of was such as would be reasonably calculated to injure his rights. See *Sharpe v. State*, 648 S.W.2d 705 (Tex.Cr.App.1983). The preceding sentence and the words complained of read as follows:

"THE COURT: Now, under the law, every person is presumed to be innocent until proven guilty by legal and competent evidence presented to you here during the trial and under the direction of the Court. His guilt is established beyond a reasonable doubt. ..."

Two pages later, the judge stated:

"... As I have stated, it is necessary and mandatory that the evidence presented to the Jury, satisfy the Jury beyond a reasonable doubt the guilt of the defendant and the Jury, after having retired to the Jury room, and after having been given the Court's instructions on the law and before they retire to deliberate, *if the Jury should have a reasonable doubt as to the defendant's guilt, after their deliberations, it will be their obligation and duty to find the defendant not guilty*. If the Jury should be satisfied beyond a reasonable doubt of the defendant's guilt, it will be their obligation and duty to find the defendant guilty." (Emphasis added)

We find that the statement complained of was taken out of context by the appellant. The statement, taken with the rest of the instructions, cannot be said to have injured appellant's right to an impartial trial. Additionally, since appellant made no objection at the time the statement was made, nothing was presented for review. *Minor v. State*, 469 S.W.2d 579 (Tex.Cr.App.1971); *Hovila v. State*, 562 S.W.2d 243, at 249 (Tex.Cr.App.1978), cert. den. 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979); *Sharpe*, supra; *Downey v. State*, 505 S.W.2d 907 (Tex.Cr.App.1974). Ground thirteen is overruled.

Appellant's fourteenth ground of error is a denial of a representative jury of his

peers guaranteed by the Sixth Amendment to the United States Constitution, Article I, Sections 10 and 15 of the Texas Constitution, and Article 35.16, V.A.C.C.P. Specifically, appellant claims that the trial court erroneously excused Aurora Tobar based on the state's challenge for cause. Appellant claims that Ms. Tobar's voir dire examination did not show an unequivocal ability to follow the law, but only her general opposition to the death penalty. Therefore, Ms. Tobar was not disqualified under the standard set out by the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Further, appellant submits that excluding even one juror improperly is grounds for a reversal, citing *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976).

■ *Witherspoon* is no longer the standard for determining whether a challenge for cause by the State has been improperly granted. See *Wainwright v. Witt*, — U.S. —, 105 S.Ct. 844, 83 L.Ed.2d 84 (1985). In *Witt*, the United States Supreme Court held that the proper standard to be used in disqualifying jurors in death penalty cases was whether a juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath. This standard dispenses with the automatic decision-making requirement set out in *Witherspoon*. Further, there is no requirement that a juror's bias be proved with unmistakeable clarity. *Witt*, supra, 105 S.Ct., at 852.

The Court held that this new test, taken from *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), was preferable to the *Witherspoon* standard for three reasons. First, the language in *Witherspoon* was no longer applicable to the duties of present day capital sentencing juries because in *Witherspoon*, the jury was vested with an unlimited discretion in sentencing. Whereas, at the time *Adams*, supra, was handed down, sentencing juries could not be vested with such discretion. See *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Second, the Court held the standard set out in *Witherspoon* was dicta. Finally, the *Adams* standard was proper because it was in accord with traditional reasons for excluding jurors and with the circumstances under which such determinations are made. *Witt*, supra, 105 S.Ct. at 851.

In the present case, after some questioning of Ms. Tobar, the State made a challenge against her for cause. The trial judge, after stating he felt Ms. Tobar was not disqualified, allowed the State and defense attorneys to continue their questioning.

■ Then, the following testimony occurred:

"By Mr. Fostel: [Prosecuting Attorney]

"Q. Let me start all over again. You told me on two or three occasions that you felt like you would automatically vote against the death penalty. Do you now feel like you—would you or would you not automatically be opposed to the death penalty regardless of the facts?

"A. I would be opposed.

"Q. I believe you told me that it was the way that you personally feel, plus your religion. Is that correct?

"A. Yes.

"Q. I believe you told me that it is something you had felt for a long time. Is that still the way you feel?

"A. Yes.

"Q. I asked you awhile ago if I could assume that because of your personal convictions and personal feelings in opposition to the death penalty, do you feel that under no circumstances would you be able to ever be a party to voting for the death penalty regardless of the case. I believe you told me awhile ago that you didn't feel like you could.

"A. I wouldn't.

"Q. You don't feel like you could ever be a party to a proceeding where the death penalty could result?

"A. No.

"Q. You could not?

"A. No.

"Q. In other words, under no circumstances would you personally ever vote for the death penalty. Is that right?

"A. That's right.

"Q. Do you feel like your feelings are such that it would affect your deliberations as a Juror if you were selected in this case where the death penalty is one of the possibilities?

"A. I don't think I could.

"Q. Well, then, I assume that you couldn't take an oath then that you would be required to take, if the Court required you to take it, that your feeling in opposition to the death penalty would not affect your voting in any way. Is that true?

"A. That's true.

"Q. Is your feeling so firm that you would automatically vote against the death penalty?

"A. Yes.

"Q. Even knowing that you are not going to be saying death or life but rather answering these questions yes or no, but knowing that if you answer them all yes, that the death penalty would be imposed. You don't feel like you could ever do that?

"A. No.

"Q. I appreciate your honesty and straightforwardness. Now, one other thing. Do you feel like, if you were on the Jury, that your convictions are so strong that you wouldn't let anyone talk you out of your feelings against the death penalty?

"A. No, I wouldn't let them.

"Q. You don't believe you could ever do it, regardless of the facts, you would be opposed to the death penalty?

"A. Yes.

"MR. FOSTEL: Your Honor, I renew my challenge.

*By Mr. Williamson* [Defense attorney]:

"Q. Mrs. Tobar, our law is specifically designed to take the decision out of the Jury's hand as to whether or not the death penalty should be involved. That's the reason the legislature passed the capital murder statute and it is the way it is now, so that all you would have to do is answer those questions. If this were a lesser crime, if this were a theft case, and these questions were put to you, you could answer those questions, could you not?

"A. If it was something small, yes.

"Q. As I said earlier, the Court would be the one to impose the sentence on the defendant. Your answers alone would not be the deciding factor. In other words, all twelve Jurors would have to answer those questions unanimously yes, in order for the death penalty to be imposed, but you could look at those special issues and answer those questions yes or no, could you not?

"A. I wouldn't.

"Q. Beg your pardon?

"A. I wouldn't. I don't think I would.

"MR. WILLIAMSON: Your Honor, I feel like the witness is qualified on the death penalty, based upon her earlier answers.

"THE COURT: You will be excused...."

The aforementioned testimony indicates that Ms. Tobar's views would substantially impair or prevent the performance of her duties as a juror. She was therefore properly excluded for cause under *Witt*, supra. In addition, we find Ms. Tobar was properly excluded under the former *Witherspoon* test. Ground of error fourteen is overruled.

Grounds of error fifteen and eighteen are discussed together. Appellant's fifteenth ground of error concerns a failure to grant his challenge for cause of prospective juror W.F. Dixon, who had expressed an opinion that appellant was guilty of the offense charged. When the trial court failed to excuse for cause, appellant then had to use one of his peremptory challenges. Appellant did not use all of his peremptory challenges, but claims the rule of law in *Sifford v. State*, 505 S.W.2d 866

(Tex.Cr.App.1974); *Payton v. State*, 572 S.W.2d 677 (Tex.Cr.App.1978); and *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr. App.1978) (all cited by appellant), should not apply because of the mistake the court made in ground of error eighteen.

Ground of error eighteen is the failure to grant extra peremptory challenges for alternate jurors. Appellant made two requests for additional peremptory challenges pursuant to Art. 35.15(d), V.A.C.C.P. Article 35.15(d) reads as follows:

"(d) The State and the defendant shall each be entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled and two peremptory challenges if three or four alternate jurors are to be impaneled. The additional peremptory challenges provided by this subsection may be used against an alternate juror only, and the other peremptory challenges allowed by law may not be used against an alternate juror."

Appellant's first request for additional peremptory challenges was at a time when there was still one juror to be selected and prior to any questioning of alternate jurors. At that time, appellant still had four peremptory challenges left. The court refrained from ruling on appellant's request until such time as appellant had exhausted all of his challenges. Appellant claims that since he was not then afforded extra strikes, he had to plan to save some of his remaining strikes because it was his impression that the judge was not going to give him additional strikes for the alternate jurors, in accordance with Art. 35.15(d).

When appellant made his second request, the only jurors to be selected were the alternates. At that time, the court notified appellant that he had four strikes left. It is appellant's contention that had he made a strike (with one of the four remaining), the court *might* then have refused to allow extra strikes under Art. 35.15(d).

We concede that the trial court erred in the number of strikes allowed in selecting alternate jurors but fail to see how appellant sustained any harm by receiving *more* peremptory strikes than he should have. Had the State been granted extra strikes or had appellant been denied the use of his four remaining strikes and denied additional, alternate strikes, to use for the alternate jurors are issues not before us. Appellant cannot sustain his burden of showing error by simply stating his impression of what the court *may* have done had he completely run out of peremptory challenges. To show harm in this situation, the accused must first at some point run out of challenges, have requested and been denied addional challenges, and then show that he was harmed by being forced to take a later, prospective juror whom he would have struck, but was unable to because he did not have the sufficient number of strikes to which he was entitled, see *Hernandez v. State*, 563 S.W.2d 947 (Tex.Cr.App.1978). Appellant has not met this burden. Grounds of error fifteen and eighteen are overruled.

Ground of error seventeen is the failure to excuse potential juror Levon Parker because he was biased, and appellant had to use another peremptory challenge. Appellant makes the same argument here as in ground of error fifteen and urges again the circumstances of ground eighteen should create an exception to the requirement of using all of his challenges. For the same reason as stated in grounds fifteen and eighteen, ground seventeen is overruled.

Appellant's sixteenth ground of error is the improper sua sponte exclusion of a prospective juror, Edmundo Vargas, by the trial court. Appellant claims the excusal can only be *sua sponte* by the court for an absolute disqualification, citing *Pearce v. State*, 513 S.W.2d 539 (Tex.Cr.App.1974), and *Chambers v. State*, 568 S.W.2d 313 (Tex.Cr.App.1978), cert. den. 440 U.S. 928, 99 S.Ct. 1264, 59 L.Ed.2d 484 (1979). Appellant correctly states the rule that when the court erroneously discharges a qualified prospective juror, under *Payton v. State*, 572 S.W.2d 677 (Tex.Cr.App.1978), the showing for reversal is the same as when a challenge by the State is mistaken-

ly granted, but there is no harm if the State has leftover peremptory challenges. *Payton,* supra; *Pearce,* supra; *Culley v. State,* 505 S.W.2d 567 (Tex.Cr.App.1974). Appellant is also correct that the rule in *Payton* has no application in a capital case, because peremptory strikes are exercised after each prospective juror is questioned, as opposed to waiting until after the entire panel is examined in a non-capital case. See *Grijalva v. State,* 614 S.W.2d 420 (Tex. Cr.App.1981) (overruling *Chambers,* supra).

■■■ However, we find that the facts of this case do not show a sua sponte disqualification by the trial court, as appellant alleges. The following occurred during the voir dire of prospective juror Edmundo Vargas:

*By Mr. Williamson [defense attorney]:*

"Q. Okay. And if he is guilty on the issue of capital murder, would you automatically impose the death sentence?

"A. Yes.

"Q. Without listening, in any way, to the testimony. If you find he is guilty of the offense of capital murder, let me go back to the chart, if you find he is guilty of the offense of capital murder, you are going to give him the death penalty?

"A. If he is guilty, yes.

"MR. WILLIAMSON: Your Honor, I submit the Juror should be challenged for cause.

### EXAMINATION,

*By Mr. Fostel [State's attorney]:*

"Q. You wouldn't automatically give him the death penalty, would you? You would consider everything in the punishment stage, wouldn't you?

"A. I would have to hear everything.

"Q. You would consider a life sentence as well as the death penalty?

"A. Yes, sir.

### EXAMINATION,

*By Mr. Williamson:*

"Q. Let's back up. What have you heard about this case, Mr. Vargas?

"A. Just what I read in the Ozona Stockman.

"Q. Okay. Can you tell me what you read in there?

"A. That—Well, that he had—they were going to try him here for the murder of that woman. That's all I read.

" . . .

"Q. Let me ask you this. Suppose you were the person on trial here for capital murder and there was a potential Juror who had the same frame of mind as you do now, would you want that person on your Jury?

"A. No.

"Q. Why not?

"A. I don't know. If I do something like that, it would be up to the Jury.

"Q. That's what I'm saying. If you were sitting right here where this man is sitting and you were charged with a capital murder, would you want a potential Juror on your case with you knowing what your frame of mind is right now?

"A. About him? I wouldn't know.

"Q. Well now, if you were sitting beside me and we were trying you for capital murder, would you want a Juror like you think right now, would you lean over and say let's take him as a Juror?

"A. No.

"Q. You wouldn't want that?

"A. No.

"THE COURT: I'm going to honor the defense attorney's request that this Juror be excused, from your earlier questions. I think the answers you are getting now—I anticipate it again. He said it twice that he would not pick a Juror with his frame of mind.

"MR. WILLIAMSON: I withdraw my earlier request.

"THE COURT: I'm going to honor your earlier request that he be excused for cause. Mr. Vargas, you are excused from this Jury, You will not have to serve. I'm going to ask you to please not discuss this case with anyone until after it is over. I appreciate your being

here and your time and your willingness to serve.

"MR. WILLIAMSON: I would like for the Court to note my exception. I withdrew my earlier challenge for cause and I submit that the Court, in excusing this Juror, at this point, would be violative of this man's sixth and fourteenth Amendment Rights to a fair and impartial Jury.

"THE COURT: Do you have any response, Mr. Fostel?

"MR. FOSTEL: No, Your Honor.

"THE COURT: You are excused."

Appellant cannot challenge a juror, get a ruling, *then* withdraw his challenge, and complain of error on the judge's part. Ground sixteen is overruled.

Appellant's nineteenth ground of error is that the indictment in this case did not properly apprise him of the nature and cause of the accusation. Specifically, he points out that the three special issues of Art. 37.071(b), V.A.C.C.P.,[2] were not included in the indictment, and therefore the state did not plead in the indictment all the elements necessary to be proven to allow the sentence of death to be imposed.

Appellant cites *Lindsay v. State*, 588 S.W.2d 570 (Tex.Cr.App.1979) which held an indictment invalid because the allegation "capital murder for remuneration and the promise of remuneration" failed to satisfy the requirement that everything necessary to be proved should be stated in the indictment. See Art. 21.03, V.A.C.C.P.

■ Appellant is correct in his assertion that everything necessary to be proven to sustain a conviction *in the guilt/innocence phase* must be alleged in an indictment. However, the special issues of Art. 37.-071(b), supra, are not an element of the offense of capital murder; Art. 37.071 relates only to punishment.

V.T.C.A., Penal Code Sec. 19.03 states what needs to be proven to convict a person of capital murder. Section 19.03 reads in relevant part:

"(a) A person commits an offense if he commits murder as defined under Section 19.02(a)(1) of this code and:

 . . . . .

"(2) the person intentionally commits the murder in the course of committing or attempting to commit kidnapping...."

V.T.C.A., Penal Code Sec. 19.02(a)(1) reads in relevant part:

"(a) A person commits an offense if he:

"(1) intentionally or knowingly causes the death of an individual; ..."

V.T.C.A., Penal Code Sec. 20.02 reads in relevant part:

"(a) A person commits an offense if he intentionally or knowingly abducts another person...."

The indictment in this case reads in relevant part:

"... MICHAEL EUGENE SHARP ... did then and there intentionally and knowingly cause the death of an individual, Brenda Kay Broadway, by stabbing the said Brenda Kay Broadway with a knife; and the said MICHAEL EUGENE SHARP did then and there intentionally

**2.** Art. 37.071 reads as follows:

Procedure in Capital Case

"(a) Upon a finding that the defendant is guilty of a capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death or life imprisonment....

"(b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonably expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

"(c) The state must prove each issue submitted *beyond a reasonable doubt, and the jury* shall return a special verdict of 'yes' or 'no' on each issue submitted.

"...

"(e) If the jury returns an affirmative finding on each issue submitted under this article, the court shall sentence the defendant to death...."

cause the death of the said Brenda Kay Broadway in the course of committing the offense of kidnapping, to-wit: MICHAEL EUGENE SHARP did then and there intentionally and knowingly abduct the said Brenda Kay Broadway by threatening to use deadly force on the said Brenda Kay Broadway, without the consent of the said Brenda Kay Broadway and with intent to prevent the liberation of the said Brenda Kay Broadway, ..."

■ While the indictment must allege everything necessary to be proven to sustain a conviction, it need not state more. The indictment is sufficient.

Ground of error nineteen is overruled.

The judgment of the trial court is affirmed.

MILLER, J., concurs in the result only in ground of error sixteen, but otherwise joins the opinion of the majority.

CLINTON, J., dissents.

TEAGUE, Judge, dissenting.

As a general proposition, based upon what this Court has stated and held in the past, it is true as the majority opinion states, that "Evidence of unadjudicated offenses is admissible at the punishment phase of a capital murder case." However, simply making such a conclusory statement is not always sufficient to dispose of a contention that such should not have been admitted into evidence at the punishment stage of a capital murder trial.

My understanding of the record in this cause is that to establish the unadjudicated offense of the murder of Blanca Arreola, the State relied solely upon what the appellant, who was then in custody and represented by counsel, had told a Detective Smith concerning Arreola's murder, her burial, and the place where her body was buried. Notwithstanding these incriminating statements, by the record before us, the appellant to this day has not been charged with the murder of Arreola.

Appellant asserts, inter alia, that because the prosecuting attorney affirmatively represented to the trial judge during the pretrial phase of this cause that no such oral statements were made by the appellant, and thus none would be used by the prosecuting attorney during the trial of this cause, his subsequent use of such statements over objection constitutes reversible error.

The majority opinion, in extremely casual fashion, disposes of the appellant's contentions that the statements should not have been admitted into evidence, because, inter alia, there was no showing of a compliance with the then provisions of Art. 38.22, V.A. C.C.P., by simply holding that his counsel's trial objection was insufficient to preserve the error. Had what occurred in this cause not occurred, I might agree.

Appellant's counsel acknowledges the fact he did not properly object in the trial court, but explains to this Court in satisfactory fashion, to me at least, that this occurred because the prosecuting attorney had affirmatively stated during pretrial that the State would not seek to offer any oral statements of the appellant during his trial. In other words, the reason why the appellant's attorney did not sufficiently articulate his objection at trial was because he got sandbagged by the prosecuting attorney's false representation. Interestingly, in its appellate brief, the State does not even attempt to take issue with what the appellant's attorney's asserts, nor does it seek to justify the actions of the prosecuting attorney.

Had the appellant's attorney not got sandbagged in the trial court by the prosecuting attorney, I am confident that he would have more intelligently expressed his objections why the statements that the appellant made to Smith were inadmissible.

Based upon this record, it is obvious to me that the statements that appellant made to Smith are, under Art. 38.22, supra, inadmissible as a matter of law. This, of course, might explain why the prosecuting attorney represented that he was not going to introduce any such statements into evi-

**626**

dence at the appellant's trial. See and compare *King v. State*, 657 S.W.2d 109 (Tex.Cr. App.1983), with the provisions of Art. 38.-22, supra, as worded at the time the statements were obtained from the appellant. Of course, the prosecuting attorney was presumed to have been aware that, under the existing law at the time, the admissibility of evidence that is offered pursuant to Art. 37.071, supra, is governed by exclusionary rules of evidence. *King*, supra, at 111.

If this Court is willing to sweep the appellant's contentions under the rug labeled "The objection is insufficient to preserve the alleged errors appellant now complains of," it should at least be willing to remand this cause to the trial court in order to hold a hearing on the fundamental error issue whether the appellant was denied and deprived of the effective assistance of counsel at his trial.

I would review the error in the interest of justice or at least remand the cause to the trial court for a hearing to be held on the issue whether the appellant was deprived of the effective assistance of counsel at his trial. Because the majority of this Court refuses to do either, I must dissent.