PD-1343-15

PD-1343-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/15/2015 4:18:25 PM
Accepted 10/16/2015 1:50:13 PM
ABEL ACOSTA
CLERK

NO.

IN THE COURT OF CRIMINAL APPEALS OF

OF THE STATE OF TEXAS

AT AUSTIN, TEXAS

_____

No.01-12-01074-CR
IN THE COURT OF APPEALS
FOR THE
FIRST SUPREME JUDICIAL DISTRICT
AT HOUSTON

_____

| | | |
|---|---|---|
| FRANCISCO ARZATE | § | APPELLANT |
| V. | § | |
| STATE OF TEXAS | § | APPELLEE |

_____

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

_____


J. SIDNEY CROWLEY
214 Morton St.
Richmond. Tx. 77469
TBC No. 05170200
Attorney for Appellant

FILED IN
COURT OF CRIMINAL APPEALS

October 16, 2015

ABEL ACOSTA, CLERK

## INTERESTED PARTIES

TRIAL JUDGE
Hon. Mary Lou Keel
232nd District Court of Harris County

APPELLANT
Francisco Arzate
Texas Department of Criminal Justice
Institutional Division

TRIAL COUNSEL
 Anthony Osso
Mario Madrid
440 Louisiana, Suite 1730
Houston, Texas 77002

APPELLATE COUNSEL
J. Sidney Crowley
214 Morton St.
Richmond, Texas 77469

STATE OF TEXAS
Devon Anderson
District Attorney, Harris County
1201 Franklin St.
Houston, Texas 77002

Tina Ansari
Assistant District Attorney
Harris County, Texas

Charles Brodsky
Assistant District Attorney
Harris County, Texas

# TABLE OF CONTENTS

INTERESTED PARTIES.................................................................................2

LIST OF AUTHORITIES.............................................................................4

STATEMENT REGARDING ORAL ARGUMENT..............................................5

STATEMENT OF THE CASE......................................................................6

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE....................7

GROUNDS FOR REVIEW.........................................................................8

GROUND FOR REVIEW NUMBER ONE
     The Court of Appeals erred when it held that the evidence was sufficient to
     support Appellant's conviction for capital murder.........................................9

 PRAYER FOR RELIEF..............................................................................11

CERTIFICATE OF COMPLIANCE...............................................................12

CERTIFICATE OF SERVICE......................................................................12

APPENDIX  A. (OPINION BELOW)............................................................13

## LIST OF AUTHORITIES

Cases

Curry v. State, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).......................................9

Davis v. State, 180 S.W.3d 276, 286 (Tex.App.-Texarkana, 2005)..........................10

Greene v. State, 124 S.W.3d 789, 792 (Tex.App-Houston [1st Dist.] 2003,ref'd)...10

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1989)........................................9

Jones v. State, 984 S.W.2d 254, 257 (Tex.Crim.App. 1998)...................................10

King v.State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000)........................................9

Losada v. State, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986)................................9

Muniz v. State, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993)..................................10

Salinas v. State, 163 S.W.2d 734, 737 (Tex.Crim.App. 2005)..................................9

Scott v. State, 2007 WL 2264458 (Tex.App.-Houston [1st Dist.] 2007)(not

designated for publication)......................................................................................10

Sharp v. State, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986)...................................9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes that oral argument is not necessary in this case.

## STATEMENT OF THE CASE

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Appellant was convicted by a jury of the felony offense of capital murder and assessed a punishment of confinement in the Texas Department of Criminal Justice, Correctional Division, for life.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

Appellant's appeal was affirmed in an unpublished opinion of the First Court of Appeals rendered December 17, 2012. No motion for rehearing was filed.

## GROUNDS FOR REVIEW

GROUND FOR REVIEW NUMBER ONE:

The Court of Appeals erred when it held that the evidence was sufficient to sustain Appellant's conviction for capital murder.

## GROUND FOR REVIEW NUMBER ONE

The Court of Appeals erred when it held that the evidence was sufficient to support Appellant's conviction for capital murder.

### Argument and Authorities

In a legal sufficiency review the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979); Salinas v. State, 163 S.W.3d 734, 737 (Tex.Crim.App. 2005); Wesbrook v. State, 29 S.W.3d 103, 111, (Tex.Crim.App. 2000); The jury as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness' testimony. Jones v. State, 984 S.W.2d 254, 257 (Tex.Crim.App. 1998). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. Sharp v. State, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Reconciliation of conflicts in the evidence is within the jury's discretion and such conflicts alone will not warrant reversal if there is enough credible evidence to support a conviction. Losada v. State, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986). An appellate court may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute

its judgement for that of the factfinder. <u>King v. State</u>, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Inconsistencies in the evidence are resolved in favor of the verdict. <u>Curry v. State</u>, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). The appellate court does not engage in a second evaluation of the weight and credibility of the evidence, but only ensures that the jury reached a rational decision. <u>Muniz v. State</u>, 851 S.W.2d 238, 246 (Tex.Crim.App. 1993).

In Appellant's case there were no witnesses who testified that they had visually observed the shooter. The only evidence that linked Appellant to the murder was the testimony of the complainant's family that they recognized the voice of the intruder as that of Appellant. There was no physical evidence such as fingerprints or DNA or ballistics evidence that linked Appellant with the crime.

It is true that eyewitness testimony is unnecessary, as long as other evidence establishes the guilt of the offense. <u>Greene v. State</u>, 124 S.W.3d 789, 792 (Tex.App.-Houston [1st Dist.] 2003, ref'd). Appellant is aware that voice identification has been held legally and factually sufficient to support a conviction. <u>Davis v. State</u>, 180 S.W.3d 276, 286 (Tex.App.-Texarkana, 2005); <u>Scott v. State</u>, 2007 WL 2264458 (Tex.App.-Houston [1st Dist.] 2007)(not designated for publication). Appellant would argue that voice identification alone provides a shaky foundation and in and of itself is less reliable than eyewitness identification and that a rational jury could not have

10

found Appellant guilty based upon that alone. It is true that in Appellant's case there was some circumstantial evidence in the remarks Appellant allegedly made to Patricia and to Ricardo Gonzalez, but would urge that there was never a direct admission by Appellant that he had committed the murder. Even with this additional evidence, the court should hold that the evidence was legally insufficient to support the conviction. The Court of Appeals erred when it held otherwise.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that this Court grant this Petition for Discretionary Review, that the case be set for submission; that after submission this Court reverse the judgement of the Court of Appeals and reform the judgement to reflect an acquittal.

Respectfully submitted,

/s/ J. Sidney Crowley

J. Sidney Crowley
214 Morton St.
Richmond, Tx. 77469
(281)232-8332
TBC No. 05170200

11

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document contains 1137 words, generated by computer.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been mailed to the Harris County District Attorney's Office, and to Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711, this the 15th day of October, 2015-.

/s/ J. Sidney Crowley

**Opinion issued December 17, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01074-CR

———————————

**FRANCISCO ARZATE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1317247**

---

## MEMORANDUM OPINION

Francisco Arzate appeals a judgment convicting him of capital murder for

the shooting of his father-in-law, Guillermo Valdez. *See* TEX. PEN. CODE ANN.

§ 19.03(a)(2) (West Supp. 2013). A jury found Arzate guilty, and the trial judge

sentenced him to life in prison. In his sole issue on appeal, Arzate contends that the evidence is legally insufficient to support his conviction. We affirm.

## Background

Arzate was married to Maria and Guillermo Valdez's daughter, Patricia, for almost ten years, but he and Patricia had separated two years before the incident. Patricia and Arzate had five children. Patricia testified that she and Arzate had an unstable relationship and often fought and that she moved to her parents' home upon her separation from Arzate. In August 2011, Arzate was upset because he had recently learned that Patricia was in a relationship with another man. Arzate had called Patricia upset about her boyfriend and threatened that he would take action if Patricia did not end that relationship.

Patricia testified that on the day of the incident, August, 19, 2011, she talked to Arzate about paying school tuition, but they did not fight, and it was a "normal day." Arzate left a voicemail on Patricia's phone around 11:30 p.m. that night saying that "he was suffering so [Patricia was] going to suffer the same way that he was suffering." Patricia was at the hospital with her oldest son that night, but she called her sister because the voicemail worried her. A few minutes later, Maria called Patricia and told her that Arzate had shot Maria and Guillermo.

Although Patricia was not at her parents' home at the time of the shooting, several others were. Maria testified that she and Guillermo were in their bedroom

2

watching television with the door closed late at night when Maria heard a noise. Guillermo opened the bedroom door, Maria heard Arzate say "he was going to kill us," and Arzate began shooting at Maria and Guillermo. Maria testified that she had heard Arzate's voice on many occasions and immediately recognized it. Maria also testified that she saw the side of the shooter's body and it looked like Arzate. On the night of the shooting, Maria told police that she saw only the shooter's shadow, and not the shooter's face.

Guillermo and Maria's other daughter, Elizabeth, was also at the scene. She had fallen asleep in one of the bedrooms a little after midnight, but she woke up when she heard Arzate screaming in Spanish from the living room several times, "where's the bastard?" Elizabeth then heard gunshots and Maria screaming, so she ran to the living room and saw that the front door, which had been closed and locked, was open and appeared to have been forced open. She saw that Guillermo was lying on his back—shot more than once—and Maria was bleeding. When Elizabeth saw Maria, Maria was screaming, "why Francisco, why?" and Elizabeth believed that Maria was referring to Arzate. Elizabeth did not see the shooter, but she testified that there was no doubt in her mind that the voice she heard yelling "where is the bastard?" was the voice of Arzate.

Elizabeth's thirteen year old son, Heron, was also home and sleeping on the living room couch when the shooting took place. Heron testified that he also heard

3

Arzate yelling, "where was the bastard at?" Heron did not see Arzate on the night of the shooting, but recognized his voice because he had often visited Arzate's house. Heron also testified that he heard Maria say, "why Francisco, why?"

By the time police and EMS arrived, Guillermo was dead from four gunshot wounds. Arzate called Patricia after the incident, but she did not answer.

The day after the shooting, Arzate called his employer, Richard Gonzalez, and told him "that he wasn't going to be coming in because he had an issue, something happened with his family and he doesn't know if he's ever going to come back." Gonzalez testified that during the same phone call, Arzate also said, "what happened happened."

The police suspected Arzate was the shooter and that he had fled to Mexico shortly after the shooting. Arzate's brother and sister testified that Arzate went to Mexico but added that the trip was a planned vacation to visit family. Patricia testified that this was Arzate's first trip to Mexico and that he would not have vacationed there because he did not have documentation that would allow him to re-enter the United States.

A few months after the shooting, Arzate sent Patricia a text message that said, "I'm sorry. Are you guys okay. Are my kids okay." Patricia testified that Arzate also called her from Mexico. In one such call, Arzate, who had said he was angry that Patricia was not taking his calls, threatened Patricia by saying that "The

same thing that he did to [her] dad he was going to do it to [her] grandma, that he knew where she lived and he was going to go over there and get her also."

Patricia also testified that Arzate attempted to have her create an alibi for him. In a letter, Arzate wrote: "do it for our children and for the love we had between us. You know it wasn't my fault about your father. Why do you want to take your children's father away." The letter continued: "If you feel something in your heart you tell the lawyer that I was in Mexico."

Arzate also called Gonzalez and threatened that Gonzalez would suffer the same fate as Guillermo. When Arzate left for Mexico, Arzate had left his car and tools with Gonzalez. Gonzalez testified that Arzate told him that if Gonzalez did not pay Arzate's brother for the vehicle and his tools, that he "was going to kill me and come after my family." Gonzalez testified that Arzate added, "If you don't believe me you saw what happened to my in-laws."

## Discussion

In his sole point of error, Arzate contends that the evidence is legally insufficient to support his conviction. Specifically, Arzate argues that a rational jury could not have found him guilty based solely upon voice identification, which he argues is less reliable than eyewitness identification.

## A.    Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.  *McGregor v. State*, 394 S.W.3d 90, 109 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979)); *see also Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding *Jackson* standard is only standard to use when determining sufficiency of evidence).  Our review of "all of the evidence" includes evidence that was properly and improperly admitted.  *McGregor*, 394 S.W.3d at 110 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony.  *Id.* (citing *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008)).  A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony.  *Id.* (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986)).  We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder.  *Id.* (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)).  We afford almost complete deference to the jury's determinations of credibility and we resolve any inconsistencies in the evidence in

6

favor of the verdict. *Id.* (citing *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

**B.     Applicable Law**

A person commits capital murder when he commits murder under section 19.02(b)(1) of the Penal Code and "commits the murder in the course of committing or attempting to commit . . . burglary."  TEX. PEN. CODE ANN. § 19.03(a)(2).  A person commits the offense of burglary if, "without the effective consent of the owner," the person "enters a building or habitation and commits or attempts to commit a felony, theft, or assault."  TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011).  Under section 19.02(b)(1), a person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another.  TEX. PENAL CODE § 19.02(b)(1), (2) (West 2011); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013).

A murder conviction may be based on circumstantial evidence.  *Temple*, 390 S.W.3d at 359 (citing *Clayton*, 235 S.W.3d at 778).  "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).  In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly

7

and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.* (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

**C.    Analysis**

To prove that Arzate is guilty of capital murder, the State had to prove beyond a reasonable doubt that Arzate, in the course of a burglary or attempted burglary, knowingly or intentionally caused Guillermo's death or intended to cause Guillermo serious bodily injury and committed an act clearly dangerous to human life that caused Guillermo's death. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1); 19.03(a)(2).

We conclude the evidence supports the jury's guilty verdict. First, three witnesses who had known Arzate for years identified Arzate as the shooter based on his voice. Maria testified that she heard Arzate say "he was going to kill us" and then the shooter began shooting at her and Guillermo. Elizabeth testified that it was Arzate who screamed "where's the bastard" right before she heard gunshots. Heron also testified that it was Arzate who yelled those words. Voice identification is an acceptable means of identification and has been held sufficient to support a conviction. *See Locke v. State*, 453 S.W.2d 484, 485 (Tex. Crim. App. 1970) ("Voice is a competent means of identification if the witness had any previous

8

acquaintance with the person identified"); *Davis v. State*, 180 S.W.3d 277, 285–86 (Tex. App.—Texarkana 2005, no pet.) (holding voice identification sufficient to support conviction).

Second, Arzate's conduct after the murder indicates consciousness of guilt. There is evidence that Arzate was in Mexico after the shooting, despite the fact that he had not previously traveled to Mexico because his immigration status made it impossible for him to return. Gonzalez testified that Arzate told him the day after the murder "something happened with his family and he doesn't know if he's ever going to come back."

Finally, there is evidence that Arzate implicitly admitted shooting Guillermo, explicitly asked Patricia to create an alibi for him, and threatened both Patricia and Gonzalez that their relatives would meet the same fate as Guillermo if his demands were not met. Patricia testified that Arzate sent her a letter asking Patricia to lie about his whereabouts on the night of the shooting. Patricia also testified that a few months after Guillermo's murder, Arzate sent her a text message stating that he was "sorry" and that Arzate also called her from Mexico and threatened to do the "same thing" to her grandma that he did to Guillermo. Gonzalez testified that Arzate called him several times after the murder and during one call threatened to kill Gonzalez and go after his family if Gonzalez did not pay Arzate's brother. Gonzalez testified that Arzate substantiated the threat by saying,

9

"if you don't believe me you saw what happened to my in-laws. What do you think is going to happen to you[?]"  And, in a voicemail Arzate left Patricia on the night of the shooting, he warned that he was going to make her suffer like she was making him suffer.

Arzate contends that the State's failure to present an eyewitness identifying Arzate or physical evidence—such as fingerprints, DNA, or ballistic evidence—linking Arzate with the shooting renders the evidence insufficient.  But, the lack of physical evidence, such as fingerprints, footprints, or DNA, does not render the evidence supporting a conviction insufficient.  *Harmon v. State*, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).  Similarly, eyewitness identification is not required for a conviction.  *Green v. State*, 124 S.W.3d 789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (eyewitness identification is not necessary to identify perpetrator).  The lack of eyewitness testimony and physical evidence were factors for the jury to consider in weighing the evidence, and we defer to the jury's resolution of these issues.  *See McGregor*, 394 S.W.3d at 110.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that during the course of committing a burglary, Arzate intentionally or knowingly caused Guillermo's death or intended to cause his death and committed an act clearly dangerous to human life that caused his death.  Accordingly, we hold the evidence was legally sufficient to

10

support the judgment. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) ("Evidence of flight or escape is admissible as a circumstance from which an inference of guilt may be drawn."); *McInturf v. State*, 544 S.W.2d 417, 419 (Tex. Crim App. 1976) (holding voice identification is direct evidence, which may constitute sufficient basis for conviction, and testimony about voice identification is question of fact for jury); *Kesaria v. State*, 148 S.W.3d 634, 640–41 (Tex. App.—Houston [14th Dist.] 2004) (holding evidence was sufficient to establish defendant's identity to support burglary of habitation conviction where victims unequivocally identified defendant as man who burglarized home in part because they recognized his voice), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006).

We overrule Arzate's sole point of error.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11