Cain-J v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-228-CR

     JARVIS CAIN,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 94-889-C
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Cain appeals his conviction for attempted murder for which he was sentenced to two
years in the Texas Department of Criminal Justice, Institutional Division.
      This case involved Appellant and Dr. George Jurek from whom Appellant had rented a house
for six years. Jurek decided to sell the house in 1994 and gave Appellant notice to vacate in the
latter part of June. Appellant did not vacate and paid his rent for July. Jurek then gave another
notice in late July and asked Appellant to vacate immediately. Appellant moved out most of his
personal property and on August 2 met with Jurek to deliver possession of the property. They
went through the house and everything was in order. However, Jurek discovered a water leak and
water under the house.
      Appellant had placed a security deposit with Jurek which was to be returned. However, Jurek
had forgotten his checkbook and could not give Appellant his deposit at the time and offered to
mail the deposit but Appellant would not give him a forwarding address. 
      Jurek went home, changed his clothes, and then returned to the house to check on the water
leak and change the locks. Feeling apprehension, Jurek took a 22-caliber handgun which he
placed in his waistband. Jurek arrived at the house and began removing water from under the
house. While he was doing so, Appellant arrived with a neighbor, Calvin Meadors. There was
discussion about the water leak and Meadors stated he had leaks under his house. Appellant and
Meadors then left.
      Jurek testified that: Appellant came back alone and went into a rage about having to move;
Jurek asked him to leave which he did; Jurek then went outside to get a screwdriver to change the
locks and as he walked outside to his truck, he was shot. Jurek further testified that he never
threatened Appellant nor did he ever brandish the weapon.
      Appellant testified that: when he came back to the house he went inside to talk with Jurek
about returning his security deposit; Jurek was upset over the water leak; he asked Jurek for his
security deposit and Jurek told him to leave the property and pulled his gun. Appellant also
testified that he was frustrated and went next door to tell Meadors what had happened; that
Meadors told him the best thing to do was to leave which Appellant decided to do; that as he was
going to his car Jurek came out of the house; that "he saw Jurek come around his truck like he was
fixing to pull his pistol again"; that he feared for his safety, removed the shotgun from his car and
shot Jurek. 
      Meadors testified that he came to the house with Appellant; that the house was in mint
condition; that Jurek was at the house and talked with him about the water leak; that he told Jurek
he had to replace the pipes in his house because of damage caused by alkaline soil; that he went
back to his house; that Appellant came back to his house upset and told him Jurek had pulled a gun
on him; that he told Appellant to get into his car and leave; and that Appellant then left his house.
      Appellant did not deny shooting Jurek, but claimed the shooting was in self defense. The jury
found appellant guilty of attempted murder and assessed punishment at two years in prison.       Appellant appeals on two points of error.
      Point one: "There was insufficient evidence to rebut Appellant's claim of self defense where
Appellant clearly established the victim was armed and had pulled his weapon on him earlier."
      Specifically, Appellant seeks review of his conviction under the factual sufficiency standard
of review as set out in Stone v. State, 823 S.W.2d 375, 377 (Tex. App.—Austin 1992), and Clewis
v. State, No. 450-94, slip op. (Tex. Crim. App., January 31, 1996). Those cases hold that when
a court of appeals determines that a verdict is against the great weight of all the evidence as to be
clearly wrong and unjust, it must reverse the verdict and remand for a new trial.
      The trial court instructed the jury on self defense in pertinent part as follows:
You are instructed that a person is justified in using force against another when and
to the degree he reasonably believes the force is immediately necessary to protect himself
against the other person's use or attempted use of unlawful force.
. . .
A person is justified in using deadly force against another if he would be justified in
using force against the other in the first place, as above set out, and when he reasonably
believes that such force is immediately necessary to protect himself against the other
person's use or attempted use of unlawful deadly force, and if a reasonable person in
defendant's situation would not have retreated.



By the term `deadly force' is meant force that is intended or known by the person
using it to cause, or in the manner of its use or intended use, is capable of causing death
or serious bodily injury.
. . .
By the term `reasonable belief', as used herein, is meant a belief that would be held
by an ordinary and prudent person in the same circumstances as the defendant.
The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986).
      When faced with a record of historical facts with conflicting influences, the appellate court
should presume that the trier of fact resolved conflicts in favor of the verdict and should defer to
that presumption. Watson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1981).
      The State, through several witnesses, showed that Jurek was not threatening Appellant and,
in fact, the victim's weapon was still out of sight after the shooting. Additionally, Appellant
testified that he saw the victim reaching for a weapon, that he (Appellant) then reached into his
car and removed the shotgun from the case, aimed the shotgun, and shot the victim, all before the
victim could draw his weapon. Appellant further testified the victim did not have a weapon in his
hand at the time he was shot.
      The witness Bray testified that he went to assist Dr. Jurek after the shooting and Jurek's
weapon was still tucked in the waistband of Jurek's pants. Witness Augley testified she was
traveling on North New Road directly in front of the house where the shooting occurred; that she
witnessed "a black gentleman step out of his car, by his car, and as he opened the car door, he
pulled out a long gun." She further testified she saw the man walk around the back of his car,
raise the gun as he approached the house, and fire the gun. She identified Appellant as the person
firing the gun. She also testified she went to assist the victim and that his gun was still tucked into
his waistband and obscured from sight.
      Witness Podmanabhan testified he was traveling on New Road in front of the house where the
shooting occurred; that he saw a black male get out of a Cadillac with a long rifle in his hand,
walk around the vehicle and up into the yard before firing the gun.
      The only evidence of Appellant's "self defense" is his testimony that the victim pulled a gun
on him earlier and that immediately before the shooting, the victim looked as though he was
reaching for a gun. A neighbor who did not witness the shooting testified that Appellant told him
earlier that day that the victim had pulled a gun on him.
      The jury had the opportunity to view the demeanor of the witnesses and judge their
credibility. No witness, except Appellant, testified as to any real or apparent danger or threat of
harm. To the contrary, several witnesses testified that they observed Appellant calmly and
deliberately obtain a shotgun, approach the victim, and fire the shotgun at the victim.
      Moreover Appellant, when Dr. Jurek exited the house, made no effort to retreat. Under the
Stone and Clewis test, supra, we find that the jury's finding that Appellant was not acting in self
defense is not so against the great weight and preponderance of the evidence to be manifestly
unjust or unfair. Point one is overruled.
      Point two: "The court erred in refusing to allow Appellant to impeach a State's witness with
a prior inconsistent statement."
      The witness Bray was visiting with Appellant's neighbor, Meadors, the day of the shooting. 
Bray testified Appellant came over to Meadors and asked Meadors what he should do and Meadors
told him to get in his car and leave. Bray, a short time later, heard a shot and saw Appellant
holding a gun. On cross-examination, Bray was asked if he heard Appellant tell Meadors the
victim had pulled a gun on him. Bray denied hearing any such statement.
      Appellant thereafter called Officer Greenlee who responded to the shooting. During his
investigation at the scene, Greenlee had talked with Meadors and Bray. He did not remember his
conversation with Bray but he had prepared an offense report which stated, "Bray told me he came
in on the tail end of the conversation [between Meadors and Appellant], and heard the black male
say, "that guy is crazy, he pulled a gun on me."
      Appellant sought to introduce the offense report. The State objected that it was hearsay and
the trial court sustained the objection. The record reflects that the proffer was not made at trial
for the purpose of impeachment. Rule 612, Texas Rules of Criminal Evidence, permits
introduction of a prior inconsistent statement of a witness for the purpose of impeachment. The
proper predicate for impeachment with a prior inconsistent statement requires that the witness first
be asked whether he made the alleged contradictory statement to a certain person, at a certain
place, and at a certain time. Ellingsworth v. State, 487 S.W.2d 108, 112 (Tex. Crim. App. 1972).
      Appellant's proffer at trial was: "Your honor, we would like to offer the statement by the
officer that he was told by Mr. Bray that the black male stated, came around and was talking to
Mr. Meadors, that a man pulled a gun on him. That is what we would like to offer, that portion
of the testimony, that Mr. Bray told this officer that while he was having a conversation with Mr.
Meadors, the black man told him that the guy was crazy, and had pulled a gun on him, meaning
the black man. We would like to show the state of mind of the defendant at this time, and also
testimony concerning the relationship between Mr. Cain and Dr. Jurek, the fact that a gun had
been pulled on Mr. Cain, and Mr. Cain made the statement immediately, and Mr. Bray has
testified that statement was not made, even though Mr. Bray has another statement, and the
statement he made in court was inconsistent with the statement that he made before."
      Although Appellant now contends he wished to introduce the offense report for impeachment
of witness Bray, such was not his statement at trial.
      The trial court did not err in refusing to admit Officer Greenlee's offense report. Moreover,
evidence that Dr. Jurek had pulled a gun on Appellant was before the jury from Appellant and
from witness Meadors.
      Assuming, without deciding, the trial court should have admitted the offense report, such
failure to do so, we hold beyond a reasonable doubt did not contribute to the conviction. Tex. R.
App. P. 81(b)(2). Point two is overruled.
      The judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Justice Cummings,
      Justice Vance and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed July 3, 1996
Do not publish