**Opinion filed May 9, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00216-CR

_____

## MARTIN AREVALLO-GUERRERO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR 36669**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Martin Arevallo-Guerrero, of three counts of indecency with a child. The jury assessed Appellant's punishment at confinement for twelve years and a $2,500 fine in Count One and confinement for twenty years and a $2,500 fine in Counts Three and Four. Appellant was acquitted in Count Two. The trial court ordered that the twenty-year sentences in the third and fourth counts were to run concurrently with each other but consecutively to the sentence in the first count. We affirm.

Appellant presents four points of error on appeal. In the first point, he challenges the sufficiency of the evidence. Appellant's contention in his third point is also related to the sufficiency of the evidence; he contends that his right to due process was violated due to the lack of evidence. In his second point of error, Appellant complains of improper bolstering by the State. In his fourth point, Appellant complains of improper jury argument by the State.

We review Appellant's challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Appellant was convicted of three counts of indecency with a child for the following acts: engaging in sexual contact with A.A. by touching her genitals, engaging in sexual contact with V.A. by touching her genitals, and engaging in sexual contact with V.A. by causing V.A. to touch Appellant's genitals. *See* TEX. PENAL CODE ANN. § 21.11 (West 2011). The record shows that A.A. and V.A. were first cousins and that they were Appellant's nieces by marriage. Both girls were nine years old at the time of trial.

A.A. testified that Appellant touched her three times. On a picture that was admitted into evidence as an exhibit, A.A. identified her front private area by circling a picture of a girl's genital area, for which A.A. had no name but said it is the place where girls "go to the bathroom." She referred to her private area in the back as her "butt." One of the incidents occurred when A.A. was at V.A.'s house watching a movie in the living room. Appellant was sitting next to A.A. on the couch, and they were under a blanket. She said she was eight years old at the time. She testified, "He [Appellant] started touching me" with his hand "[i]n the part where I'm supposed to go to the bathroom." A.A. said that Appellant touched her on top of her clothes that time and that it felt bad. A.A. also testified that, during this same incident, Appellant "grabbed [A.A.'s] hand and put it on his part." She circled a picture of the male genitalia and explained that she had no name for it but that males use it "[t]o go to the bathroom." A different incident occurred at Appellant's house when he touched A.A.'s butt while they were in the kitchen. A.A.'s mother and aunt were outside at the time. The third incident occurred in V.A.'s room while A.A. was watching television. Appellant touched her butt on top of her clothes.

V.A. testified that Appellant touched her private parts "[l]ots of times." Using a picture as an exhibit, V.A. demonstrated what her two private parts were. V.A. said that one of the spots is "[w]here you pee" and that the other is the "butt." V.A. recalled one incident that occurred when she was seven years old. V.A. testified that she was at A.A.'s house watching television in the living room when Appellant came in and sat beside her. Appellant took V.A.'s pants and underwear off and, with his hand, touched her part where she pees. She and Appellant were alone in the house at the time. After Appellant stopped touching V.A., Appellant went into the restroom. She recalled another incident that occurred in Appellant's "truck." Appellant took her pants and underwear off and, with his hand, touched

her part where she pees. Appellant also grabbed V.A.'s hand and put it on Appellant's "men's part" on top of his clothes. Using a picture of a male, she identified the male genitalia and stated that it is the spot that a male uses to pee. V.A. said that Appellant's son, who was much younger than V.A., was in the "truck" too but that he was messing with the radio. V.A. said that this incident was the only time that she had to touch Appellant where "he goes pee." V.A. recalled another incident when Appellant touched her butt on top of her clothes with his hand while she and some other children were dancing in the hallway at her house. V.A. testified that one incident occurred in the toy room at Appellant's house. She was hiding from Appellant, but he found her and made her come out from under the bed. He touched her on top of her clothes with his hand; his hand was moving. Appellant stopped when a door slammed.

The outcry witness, V.A.'s mother, testified about A.A.'s behavior at the time of the outcry. V.A.'s mother asked A.A. what was wrong. A.A. was upset, crying, pulling her hair, and sucking her fingers. A.A. said, "Tio Martin [Appellant] has been touching me down here"; A.A. pointed to her genital area "down between her legs." A.A. informed V.A.'s mother that Appellant had been touching V.A. too. V.A. came inside, chastised A.A. for telling, and then confirmed that Appellant had touched V.A. too. A.A. and V.A. were scared to tell anyone about what Appellant had been doing to them. V.A.'s mother notified the police.

V.A.'s mother recalled that V.A.'s behavior changed after a particular occasion when she spent the night at Appellant's house. V.A. kept calling and asking her mother to come get her. After that, V.A. went from being "happy all the time" and "lovable to everybody" to being "scared of everything and everybody." V.A.'s mother testified that, prior to the outcry, V.A. did not want to be near Appellant and had become reluctant to go to Appellant's house. V.A.'s

4

mother also testified that, at the family get-togethers, Appellant "always wanted to be inside the house" where the children were, though the rest of the "adults were always outside."

Appellant testified at trial and denied ever touching A.A. or V.A. As the factfinder, the jury was free to judge the credibility of the witnesses. The jury apparently chose to believe the testimony of A.A. and V.A. and not to believe the testimony of Appellant. Based upon the evidence presented at trial, a rational jury could have found beyond a reasonable doubt that Appellant committed each of the elements of the three counts of indecency with a child for which he was convicted. We note that "sexual contact" includes "touching through clothing." PENAL § 21.11(c). We hold that the evidence is sufficient to support Appellant's conviction in all three counts. Furthermore, because the evidence is sufficient to support Appellant's convictions, Appellant's right to due process was not violated by a lack of evidence. Appellant's first and third points of error are overruled.

In his second point of error, Appellant complains of improper bolstering by the State when the prosecutor asked V.A. and A.A. if everything they testified about really happened to them. The record reflects that Appellant made no such objection at trial. The prosecutor's questions and the girls' answers came in without any objection by Appellant. A timely and specific objection is required to preserve an issue for appellate review. TEX. R. APP. P. 33.1(a); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Because Appellant did not object, he failed to preserve his complaint for our review. Appellant's second point of error is overruled.

In his final point of error, Appellant complains of improper jury argument by the prosecutor. Appellant did not object at trial to any of the allegedly improper statements made by the prosecutor during jury arguments. Appellant contends on appeal that no objection was necessary because the statements constitute

5

fundamental error that could not have been cured by an instruction to disregard. To support his contention, Appellant relies upon cases that were decided before 1996. In 1996, however, the Court of Criminal Appeals issued an opinion in which it held that "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal" even if the contention on appeal is that an instruction to disregard would not have cured the erroneous jury argument. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). The court in *Cockrell* expressly overruled any prior cases to the contrary. *Id.* Because Appellant did not object at trial or pursue any objection to an adverse ruling in the trial court, he has forfeited his right to complain on appeal about the allegedly improper jury arguments. *See* TEX. R. APP. P. 33.1; *Cockrell*, 933 S.W.2d at 89. Appellant's fourth point of error is overruled.

We affirm the judgments of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


May 9, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.