Affirmed and Memorandum Opinion filed May 10, 2011.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00949-CR

NO. 14-10-00950-CR



 

JAMES RICHMOND BARLEY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

 



On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause Nos. 08-DCR-050119;
08-DCR-050120



 

MEMORANDUM OPINION

             A
jury convicted appellant, James Richmond Barley, Jr., of two counts of
indecency with a child by contact and assessed punishment of twenty years’
confinement and a fine for each offense.  The trial court ordered that the
sentences run concurrently.  In his sole issue, appellant contends the evidence
is legally insufficient to support the convictions.  We affirm.

Background

The State accused appellant of committing
the offenses on or about October 15, 1997 by touching a breast and the genitals
of R.M., his then sixteen-year-old daughter.  R.M., who was twenty-eight years
old at the time of trial, testified as follows.  She was raised by her
grandmother but maintained a good relationship with appellant.  Although R.M.
did not recall the exact day, there was an occasion in the fall of 1997 when
appellant drove her home after they ran at a track.  During the ride, appellant
asked, “can I suck your titty?”  R.M. replied, “hell no.”  When he asked
“why?,” she responded, “that’s nasty . . . you’re my daddy.”  R.M. was wearing
shorts and a sports bra.  With his hand, appellant touched R.M.’s breast over
her clothing before she pushed him away.  Appellant then caressed R.M.’s leg
until reaching her vaginal area which he rubbed over her clothing.  During this
incident, he looked at R.M. as though she was “a good woman he could sleep
with” and no longer his daughter because she had fully developed.  When R.M. went
home, she immediately told her grandmother about the incident.  The next day,
her grandmother summoned appellant, who was “very agitated” and had an
“attitude” when he arrived.  R.M. also told her mother and twin sister about
the incident but did not report it to the police because she doubted they would
believe her.  

R.M. also testified she resisted
appellant’s subsequent attempts at a father-daughter relationship and did not
see him again for five years except when he would come to her grandmother’s
home trying to communicate with R.M.  During one such visit, he apologized for
“all this stuff I’ve done.”  While R.M. was still in high school, he sent her
various gifts, including red roses on Valentine’s Day, which she considered
inappropriate and typically reserved for a romantic relationship.  In her
mid-twenties, R.M. reported the incident to police because she discovered that her
two minor female cousins would be living with appellant and sought to protect
them from similar conduct.

According to the testimony of R.M.’s
grandmother, Linda Harris, on one occasion when R.M. was about sixteen-years
old, appellant did not enter the house after driving her home from the track, which
was contrary to his usual actions, and R.M. went directly to her room.  The
next day, R.M. tearfully told Harris about an incident during the run with
appellant.  At trial, Harris did not relay the substance of this conversation
but expressed that she was shocked and called appellant to her home.  When he
arrived, appellant was angry and immediately asked, “what is she lying about
now?,” which Harris perceived as odd because she had not yet mentioned the
reason he was summoned.  

            At trial, R.M.’s sister
confirmed that there was a time during high school when the sisters’ previously
good relationship with appellant ended although she did not remember the exact
date or explain the reasons.

            Another witness, Terry
Escobar, testified that during a conversation, appellant admitted he asked his
daughter, R.M., if he could “suck [her] titty?” and he felt “bad.”[1]

            Detective Jay Belton of
the Katy Police Department interviewed R.M. when investigating her report. 
Although, at trial, he did not reveal the contents of her statement, Detective
Belton testified she was visibly upset and it was painful for her to recount
the incident.  Detective Belton also confirmed with Harris that R.M. had made
an outcry about sexual abuse by her father.  Finally, Detective Belton
interviewed appellant who first denied the accusation but then admitted that he
asked R.M. if he could “suck on [her] titties” and touched her breast and
“private area.”

            Appellant presented the
testimony of his sister, Veronica Keys, who explained she confronted R.M. about
the alleged incident.  R.M. demonstrated that appellant had accidently pinched
her breast when trying to pinch her arm.  Keys further testified that R.M. was
not upset when relaying this information and continued to maintain a good
relationship with appellant.

Appellant also recalled R.M. as a
witness during his case-in-chief and presented pictures showing them together
at various family events, milestones in her life, and a vacation during the
years after the incident when she claimed they had no relationship.  R.M. also
admitted that they drove alone together on a cross-country trip during this
period.  However, R.M. testified that these occasions were seldom, she may have
“blocked” appellant’s presence from her memory, and she felt “conflicted” about
him.  

Analysis

When reviewing a legal-sufficiency challenge,
we view all evidence in the light most favorable to the verdict to determine
whether the jury was rationally justified in finding guilt beyond a reasonable
doubt.  See Brooks v. State, 323 S.W.3d
893, 899 (Tex. Crim. App. 2010) (plurality op.) (citing Jackson v. Virginia,
443
U.S. 307, 319 (1979)).
 We may not sit as a thirteenth juror and substitute our judgment for that of
the fact finder by reevaluating weight and credibility of the evidence.  Id.
at 899, 901; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999); see also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986) (expressing that jury may choose to believe or disbelieve any portion of
the testimony).  We defer to the fact finder’s resolution of conflicting
evidence unless the resolution is not rational.  See
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  Our duty as
reviewing court is to ensure the evidence presented actually supports a
conclusion that the defendant committed the crime.  Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

            A person commits an offense
if he engages in sexual contact with a child younger than seventeen.  Tex.
Penal Code Ann. § 21.11(a)(1) (West Supp. 2009).  “Sexual contact” includes
“touching through clothing, of the . . . breast, or any part of the genitals of
a child” if the act is “committed with the intent to arouse or gratify the
sexual desire of any person.”  Id. § 21.11(c)(1).  

            To support his
legal-sufficiency challenge, appellant primarily attacks R.M.’s credibility,
emphasizing the alleged internal inconsistencies regarding her relationship
with appellant after the incident, her purportedly conflicting statement to
Keys, and the delay of many years in making a police report.  However, the jury
was free to resolve any conflicts and believe R.M.’s testimony, including her
explanation for the delay.  

Moreover, the jury could have reasonably
considered the following as corroborating R.M.’s account: Harris’s testimony
that R.M. revealed “shocking information” within a day of the incident; appellant’s
demeanor and immediate protest to Harris that R.M. was lying before Harris even
confronted him; confirmation by R.M.’s sister regarding their changed
relationship with appellant; his admissions to Escobar and Detective Belton;
and R.M.’s painful recollection when interviewed by Detective Belton.  

Appellant also attacks the
credibility of this other evidence.  He notes that R.M. claimed she reported
the incident to Harris on the day thereof whereas Harris testified their
conversation occurred the next day.  Nevertheless, the jury could have determined
this discrepancy was insignificant, attributed it to one witness’s memory lapse,
and concluded that R.M. indeed reported the incident to Harris.  Appellant also
notes that Detective Belton possessed no writing confirming appellant’s
admission.  However, Detective Belton explained that appellant refused to
provide a written statement.  Additionally, although Detective Belton indicated
his written report did not reflect appellant’s admission, he explained that it
was videotaped.  Any lack of a written report reflecting appellant’s oral
statement was merely a fact the jury was free to consider when evaluating Detective
Belton’s credibility. 

Finally, based on the type of physical
contact and appellant’s question, “can I suck your titty?,” the jury could have
concluded beyond a reasonable doubt that he touched R.M.’s breast and genitals
with “intent to arouse or gratify [his] sexual desire.”  See McKenzie
v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981) (recognizing
that, under Penal Code section 21.11, requisite specific intent to arouse or
gratify the sexual desire of any person can be inferred from defendant’s
conduct, his remarks, and surrounding circumstances).

We overrule appellant’s sole issue
and affirm the trial court’s judgment.     

 

                                                                                                                    


                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Boyce.

 

Do Not Publish — Tex. R. App. P. 47.2(b).









[1]
Outside the jury’s presence, the State informed the trial court that Escobar
was a probation officer who had this conversation with appellant when preparing
a pre-sentencing report for a different offense.  Therefore, in front of the
jury, the State did not elicit any testimony regarding Escobar’s profession or
the reason for the conversation, and she relayed only the substance of
appellant’s admission.